**UNITED STATES, Appellee,**

v.

**Jay M. HILOW, Private, U.S. Army, Appellant.**

No. 63,667.
CM 8601499.

U.S. Court of Military Appeals.

Argued Dec. 17, 1990.

Decided July 11, 1991.

For Appellant: *Captain James K. Lovejoy* (argued); *Lieutenant Colonel Russell S. Estey, Captain Timothy P. Riley, Captain Ralph L. Gonzalez* (on brief); *Colonel Robert B. Kirby.*

For Appellee: *Colonel Alfred F. Arquilla* (argued); *Lieutenant Colonel Daniel J. Dell'Orto, Captain Randy V. Cargill, Captain James A. Nortz* (on brief).

## Opinion of the Court

SULLIVAN, Chief Judge:

On December 18, 1986, appellant was tried by a general court-martial composed of a military judge alone at Bremerhaven, Federal Republic of Germany. Pursuant to his pleas, he was convicted of two specifications of wrongful use of marijuana, in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a. He was sentenced to a bad-conduct discharge, confinement for 4 months, total forfeitures, and reduction to pay grade E–1. The convening authority approved this sentence.

On December 16, 1987, the Court of Military Review remanded this record of trial to the convening authority for a limited hearing on five specific questions relating to panel-selection procedures for appellant's court-martial. The court directed that, after the hearing, the record be returned to the court for further review. In July 1988, the military judge who conducted this hearing concluded that relief was warranted at least on the basis of an appearance of impropriety in the selection of panel members. The Court of Military Review, on October 7, 1988, specified an issue for review concerning the panel-selection procedures. That court, on January 13, 1989, set aside the sentence and ordered a rehearing. *See* 29 MJ at 658. On February 3, 1989, the same court, on its own motion, ordered *en banc* reconsideration of its previous decision. On October 12, 1989, the en banc Court of Military Review affirmed the findings of guilty and the sentence. 29 MJ 641.[1]

On April 17, 1990, this Court granted appellant's petition for review on the following question of law:

WHETHER THE PANEL DETAILED TO APPELLANT'S COURT–MARTIAL WAS IMPROPERLY SELECTED IN VIOLATION OF UCMJ ARTICLES 16, 25, AND 37 BECAUSE THE NOMINATION PROCESS WAS ORCHESTRATED TO SELECT PERSONNEL WHO WOULD BE IMPERMISSIBLY OR INAPPROPRIATELY SEVERE ON MILITARY JUSTICE MATTERS.

We hold that the deliberate stacking of the pool of potential members for appellant's court-martial by a subordinate of the convening authority violated Article 37, UCMJ, 10 USC § 837. *United States v. Levite*, 25 MJ 334 (CMA 1987); *United States v. McClain*, 22 MJ 124 (CMA 1986). We further hold that the subsequent unknowing selection by the convening authority of stacked members from this pool, even in accordance with the criteria of Article 25(d)(2), UCMJ, 10 USC § 825(d)(2), did not purge this error of prejudice. *See United States v. Greene*, 20 USCMA 232, 43 CMR 72 (1970).

The facts in this case are not in dispute. The appendices to the *en banc* decision contain the command subordinate's affidavit, the judge's findings of fact at the *Dubay* hearing and the superseded opinion of the Court of Military Review. *See United States v. Hilow*, 29 MJ at 646–49, 658–61. The Court of Military Review summarized the facts in its en banc decision as follows:

Appellant alleges that he was denied his right to a fair and impartial sentence proceeding because the nomination and selection of the members detailed to his court-martial were improper. In support of that assertion, appellant submitted the affidavit of Captain (CPT) David Fierst.... CPT Fierst, then the division deputy adjutant general, alleged, *inter alia*, that he was directed by members of the staff judge advocate's office to "select nominees [for court-martial panels] who were commanders and supporters of a command policy of hard discipline."

---

1. Six of the fourteen judges on the Court of Military Review did not participate in this decision. Four judges agreed with the lead opinion; three concurred in the result; and one dissented.

Based on appellant's allegations, a limited hearing in accordance with *United States v. DuBay*, [17 USCMA 147,] 37 CMR 411 (1967), was ordered. The hearing judge found that there was no evidence to support CPT Fierst's allegation that "the [staff judge advocate] wanted [him] to select nominees who were commanders and supporters of a command policy of hard discipline." The judge found, however, that CPT Fierst himself did select nominees whom he perceived to fit this criteria. CPT Fierst submitted a list of thirty persons to the staff judge advocate. The latter combined that list with lists of nominees from two subordinate jurisdictions and submitted the combined list, containing forty-seven names, to the convening authority. In addition, the staff judge advocate provided an "alpha roster" containing the names of all military personnel in the jurisdiction. Of the thirty people selected by the convening authority, nineteen were from CPT Fierst's list. The convening authority wrote in two names that were not on the list submitted to him, although it is not clear whether he selected those names from the "alpha roster." *In the appellant's case, the convening order contained the names of six people selected from CPT Fierst's list.* If the case were tried by officers alone, three of the seven members would have been from CPT Fierst's list. Had the court included officers and enlisted members, four of the seven members would have been from CPT Fierst's list. The military judge further found that the convening authority received correct advice from the staff judge advocate and utilized the proper criteria pursuant to Article 25(d)(2), UCMJ, 10 USC § 825(d)(2), in making his selections.

29 MJ 642-43 (footnotes omitted; emphasis added).

---

■ Article 37(a) states, *inter alia:*
*No person subject to this chapter* may attempt to coerce or, by any unauthorized means, influence the action of a court-martial or any other military tribunal or any member thereof, in reaching the findings or sentence in any case, or *the action of any convening,* approving, or reviewing *authority with respect to his judicial acts.*

(Emphasis added.) This unambiguous congressional order is broadly worded and clearly applies to command subordinates. *See generally United States v. Levite,* 25 MJ at 339 n.6; *United States v. Thomas,* 22 MJ 388, 398 (CMA), *cert. denied,* 479 U.S. 1085, 107 S.Ct. 1289, 94 L.Ed.2d 146 (1987). Moreover, selection of court members to secure a result in accordance with command policy is a well-recognized form of unlawful command influence. *United States v. Smith,* 27 MJ 242 (CMA 1988); *United States v. McClain,* 22 MJ 124, 131 (CMA 1986) (Everett, C.J.), 133 (Cox, J., concurring in the result). *See generally* H. Moyer, *Justice and the Military* §§ 3–210 and 3–211 (1972). Here, the division deputy adjutant general purposefully assembled nominees for courts-martial duty "who were commanders and supporters of a command policy of hard discipline." Accordingly, Article 37(a) was violated in this case.

Article 25(d) states:

(2) When convening a court-martial, the convening authority shall detail as members thereof such members of the armed forces as, in his opinion, are best qualified for the duty by reason of age, education, training, experience, length of service, and judicial temperament. No member of an armed force is eligible to serve as a member of a general or special court-martial when he is the accuser or a witness for the prosecution or has acted as investigating officer or as counsel in the same case.

The import of this provision is that the convening authority must personally select members of a court-martial whom he believes will be experienced, impartial, and fair in fulfilling their adjudicatory responsibilities. *See generally United States v. Smith,* 27 MJ at 252 (Cox, J., concurring). Consequently, military persons who are

partial towards the prosecution or irrevocably support local command policies without regard to higher authority or inflexibly embrace a draconian punishment philosophy should not be selected by the convening authority. *See United State v. Sears,* 6 USCMA 661, 665, 20 CMR 377, 381 (1956). Moreover, to intelligently make his selections, a convening authority must be fully informed of any attempts to "stack" the court-martial panel or any other matters which may cast doubt on the fairness of the proceedings. *See* RCM 912(f)(1)(N), Manual for Courts–Martial, United States, 1984. *E.g., United States v. Greene, supra.* Accordingly, Article 25(d)(2) was also violated in this case.

Nevertheless, the *en banc* decision has suggested that justice in fact, albeit by accident, has prevailed in this case. Art. 59(a), UCMJ, 10 USC § 859(a). It conceded that six members, thought to be biased by the command subordinate, were detailed to this court-martial. Yet it noted that the convening authority, unaware of the "stacking" attempt, acted upon correct Article 25(d)(2) advice from his staff judge advocate and properly selected these members as well as others for service on this court. *United States v. Hilow,* 29 MJ at 643–44. It further noted that the tainted list of prospective members had been filtered through three additional layers of command review and combined with other lists of prospective candidates. Accordingly, the court below opined that any taint attaching to the assistant adjutant general's conduct, unlike that of a staff judge advocate, had clearly dissipated by the time of the convening authority's final selection of the panel members.

■ We cannot join this judicial evisceration of Articles 37 and 25(d)(2). This is not a case where the tainted candidates were not detailed to appellant's court-martial or where appellant, being aware of the command subordinate's manipulation, still chose trial by members. Moreover, we have recognized that a convening authority may rely on command subordinates to nominate prospective members for his consider-

ation for appointment to serve on courts-martial. *See United States v. Kemp,* 22 USCMA 152, 46 CMR 152 (1973). However, we have never held that the impact of their improper assistance can be ignored solely on the basis of the convening authority's official duty to personally select the members in accordance with the criteria of Article 25(d)(2). *See United States v. Miller,* 19 MJ 159, 163 (CMA 1985). Finally, unlawful influence in the military justice system can be exerted on a convening authority from many directions and in unsuspected ways. *United States v. Hagen,* 25 MJ 78, 87 (CMA 1987) (Sullivan, J., concurring), *cert. denied,* 484 U.S. 1060, 108 S.Ct. 1015, 98 L.Ed.2d 981 (1988). We cannot realistically or legally limit our codal concern to the conduct of staff judge advocates alone. *See generally United States v. Karlson,* 16 MJ 469, 474 (CMA 1983).

The "ratio decidendi" of the court below mirrors a similar, yet even more attractive, argument for harmless error addressed long ago in the case of *United States v. Greene,* 20 USCMA 232, 43 CMR 72 (1970). There, a convening authority, after being fully apprised of improper panel-selection procedures employed by his subordinate, reconsidered his decision and, citing Article 25(d), adhered to his original selections. Although the accused in that case eventually chose trial by military judge, this Court still reversed and ordered a rehearing. We were simply not convinced beyond a reasonable doubt that proper selection criteria were employed. *Id.* at 238, 43 CMR at 78. Surely, the same doubt exists in this case where the convening authority is not even told of the improper conduct of a subordinate and up to six stacked members appear on the court-martial convening order. *See United States v. Smith, supra; United States v. McClain,* 22 MJ at 132 (Everett, C.J.).

The right to trial by fair and impartial members or a professional military judge is the cornerstone of the military justice system. *United States v. Smith,* 27 MJ at 252

(Cox, J., concurring).[2] Denial of a full and fair opportunity to exercise this right creates an appearance of injustice which permeates the remainder of the court-martial. When such a perception is fostered or perpetuated by military authorities through ignorance or deceit, it substantially undermines the public's confidence in the integrity of the court-martial proceedings. *See United States v. McClain, supra* at 131; *United States v. Rosser,* 6 MJ 267, 273 (CMA 1979); *United States v. Hedges,* 11 USCMA 642, 29 CMR 458 (1960).

■ Moreover, command interference with the above right cannot be condoned or ignored by this Court when it actually impacts on an accused in his decision to go to trial by judge alone. *See United States v. Levite,* 25 MJ at 340. *See generally United States v. Thomas,* 22 MJ at 393–94. The record of trial, contrary to the assertion of the dissent, establishes a prima facie case of forbearance or "nexus" in appellant's case. We note the charges were preferred on November 12, 1986. They were referred to the tainted court on December 12, 1986. A pretrial agreement-without reference to trial by judge alone-was signed by appellant and his counsel on December 13, 1986. Finally, appellant's request for trial by military judge alone was signed by him on December 18, 1986, the first day of trial.

Recourse to extra-record matters does not alleviate our substantial doubts concerning a lack of prejudice. *Cf. United States v. Bethea,* 22 USCMA 223, 46 CMR 223 (1973). Footnote 13 of Judge Werner's separate opinion in *United States v. Hilow,* 29 MJ 641, 655 (ACMR 1989), states:

13. The appellant's post-trial submission, attached to the record as an allied paper, does recite that "once the case

was referred, the panel selected was viewed as a 'severe' one, and, as such, the decisions indicated at trial [to forgo trial by members] were made." The staff judge advocate's addendum to the post-trial advice [sic] indicates, however, that the election of trial by judge alone was a *sub rosa* offer to induce acceptance of the appellant's offer to plead guilty. Neither of these documents were made under oath nor are they properly a part of the record; thus, they are not competent evidence from which to find or infer a forbearance of the right to trial by members because of severity in the panel.

Thus, the dissent's selective reliance on the staff judge advocate's post-trial submission to buttress its finding of "no nexus" and to affirm this sentence is not warranted. *See United States v. Thomas, supra.*

■ Of course, appellant pleaded guilty in this case, and there is no serious contention that his pleas were induced by the irregularity occurring in the member-selection process. *See United States v. McClain, supra* at 128. Moreover, the vice in the selection of the members for appellant's court-martial centered on their purported predeliction towards severe punishment. *United States v. Hilow,* 29 MJ at 643. *Cf. United States v. Smith, supra* at 250–51. Accordingly, a rehearing on sentence alone is required to rectify this aberration of military law.

The decision of the United States Army Court of Military Review is reversed as to sentence, and the sentence is set aside. The record of trial is returned to the Judge Advocate General of the Army. A rehearing on sentence may be ordered by a convening authority from a command different

2. Judge Cox stated:
Those responsible for nominating court members should reflect upon the importance of this task. It is a solemn and awesome responsibility and not one to be taken lightly or frivolously. It is a responsibility that Congress has entrusted to convening authorities and has not required some other method of selection, such as random choice. Even so, it is the most vulnerable aspect of the court-

martial system; the easiest for critics to attack. A fair and impartial court-martial is the most fundamental protection that an accused servicemember has from unfounded or unprovable charges. There is a duty to nominate only fair and impartial members.

Because it is impossible to determine whether any prejudice resulted, I join in reversing this conviction.

**444**

from that of the original convening authority.

Senior Judge EVERETT concurs.

COX, Judge (dissenting in part):

A traveler in a strange land is seeking a safe highway to his destination. He comes to a fork in the road, and he must make a choice. Unknown to him, one road is secure and will lead him unscathed to his journey's end. The other road winds through the Valley of Doom, an evil empire inhabited by thieves, charlatans, and scofflaws, where no man can venture safely. Fortunately for the traveler, he selects the secure path and arrives safely at his destination.

Like the traveler, appellant faced a choice—trial by military judge alone or trial by members. Unknown to appellant, the member option was tainted; the judge-alone option was not. Fortunately, he chose judge-alone and got a fair trial.

I totally agree with the expressions of law relied upon by my Brothers in arriving at their determination that some of the court members detailed to hear appellant's case were improperly selected. *See United States v. Hilow*, 29 MJ 641, 647–49 (ACMR 1989). However, I part company with them because I believe the error to be "harmless." Art. 59(a), Uniform Code of Military Justice, 10 USC § 859(a). Rather, they impose "partial" strict liability on the Government for errors in the selection of court members.[1]

Thus I ask myself: Does this case signal our abandonment of the carefully constructed appellate model utilized by then-Chief Judge Everett and me in resolving the now infamous 3d Armored Division

cases? *See United States v. Thomas*, 22 MJ 388 (CMA), *cert. denied*, 479 U.S. 1085, 107 S.Ct. 1289, 94 L.Ed.2d 146 (1987); *see also United States v. Treakle*, 18 MJ 646 (ACMR 1984), *aff'd.*, 23 MJ 151 (CMA 1986). As I understand our opinion in *Thomas*, even the most pernicious of cases should be reviewed for harmless error. 22 MJ at 394. Does the present majority now imply that some evils are so enormous that they must be punished, notwithstanding that they do not affect the accused? Even some constitutional errors, after all, can be reviewed for harmless error. *See Arizona v. Fulminante*, —— U.S. ——, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991); *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *United States v. Remai*, 19 MJ 229 (CMA 1985).

I will agree that improper selection of a court-martial ordinarily would be a "structural defect[ ] in the constitution of the trial mechanism" and, thus, would not be subject to a harmless-error analysis. *Arizona v. Fulminante*, 111 S.Ct. at 1265. If, however, an accused elects a trial by military judge alone, he avoids the "structural defect," provided, however, his decision to forego his right to a trial by members is not tainted by the defect.

Thus, I would carefully examine the record to determine why the accused forewent his right to a trial by members. I find the following:

In a post-trial submission, the Government asserted that the defense, at the time it tendered the pretrial agreement, proposed to proceed with trial by military judge alone *as an inducement to the convening authority to accept the proffered agreement. To this date, appellant has*

1. I use the word "partial" advisedly. If the improper selection of members constitutes a "structural defect," it is clear that appellant is entitled to a new trial. *Arizona v. Fulminante*, —— U.S. ——, 111 S.Ct. 1246, 1265, 113 L.Ed.2d 302 (1991). Inexplicably, the Government here gets to keep the guilty plea, unlike Airman Basic Greene's case. I would have expected an all or nothing proposition. Had appellant's choice been motivated by the improprieties, the findings should have been set aside as well. As we

recited in *United States v. Greene*, 20 USCMA 232, 239, 43 CMR 72, 79 (1970), *quoting* the Court of Military Review in that case:

"Accordingly, this accused's conviction cannot stand if he abandoned his right (and was tried by military judge alone) *to avoid trial before an improperly selected panel....*"
(Emphasis mine.) Chief Judge Sullivan's attack on my dissent leaves this paradox unexplained. *See* 32 MJ at 442–443 of the majority opinion.

*not denied this assertion.* The convening authority accepted the proposal, and all parties to the trial lived up to their respective agreements.

From my reading of the record and based on my understanding of military practice and human nature, I am satisfied that appellant's election was motivated overwhelmingly by his desire to obtain a favorable sentence limitation and had little, if anything, to do with court composition. I am comforted in my conclusion by the defense's failure to deny its use of the judge-alone forum as bait for its sentence limitation and by the defense's belated objection to this "severe" court-martial panel, not in fact until long after the hearings were concluded and after Captain Fierst came forward with his statement.

Furthermore, regarding findings, *nowhere in the record of trial, allied papers, appellate pleadings, affidavits, letters to the court, or even in memoranda of telephone calls does appellant, personally, suggest that his decision to plead guilty had anything to do with the composition of the court-martial.*[2] *See United States v. Hilow, supra* at 655–56 (Werner, J., concurring in the result; Holdaway, C.J., concurring in the result). Indeed, I am satis-

fied that his decision to plead guilty was fairly and voluntarily made.

What appellant is saying to us now is that, even though he chose the forum, and even though his journey through the court-martial system was fair and in accordance with his own proposed bargain, he is entitled to relief because he has since discovered that there was evil lurking along the path *he did not choose.*

Although I champion a perfectly selected court-martial panel, *United States v. Smith,* 27 MJ 242, 251–52 (CMA 1988), even I must withhold relief where there is absolutely no nexus between the error and the result. *See United States v. Hilow,* 29 MJ at 655; *United States v. Treakle, supra.* This case is clearly distinguishable from the cases relied upon by the majority in reversing the sentence. *See United States v. Greene,* 20 USCMA 232, 43 CMR 72 (1970), and footnote, *supra.*

The Court of Military Review, sitting *en banc,* clearly understood the law and the ramifications of the selection process; and they did an excellent job of applying the law to the facts.

I join the majority in affirming the findings, but I also would affirm the sentence.

---

**2.** Since becoming a Judge of this Court, I continue to be amazed that we do not require ordinary trial practices. For example, the majority relies on an unsworn, untested post-trial submission by counsel that "once the case was referred, the panel selected was viewed as a 'severe' one and, as such, the decisions indicated at trial [to forgo trial by members] were made." 32 MJ at 443. This is no way to practice appel-

late law. *Appellant* should be required to say, "I wanted a trial by members. The panel was so severe that I gave up that right. My decision to plead guilty before the military judge alone was made *because of the panel.* My favorable pre-trial agreement had nothing to do with my decision." Perhaps if we insisted on such direct, to-the-point assertions, we could do a better job.