UNITED STATES, Appellee,

v.

Jeffery L. UPSHAW, Staff Sergeant,
U.S. Air Force, Appellant.

No. 97–0832.
Crim.App. No. 32255.

U.S. Court of Appeals for
the Armed Forces.

Argued Jan. 15, 1998.

Decided Sept. 23, 1998.

For Appellant: *Major Ray T. Blank* (argued); *Colonel Douglas H. Kohrt* (on brief); *Lieutenant Colonel Kim L. Sheffield.*

For Appellee: *Captain Steven D. Dubriske* (argued); *Colonel Brenda J. Hollis* and *Lieutenant Colonel Michael J. Breslin* (on brief).

## Opinion of the Court

GIERKE, Judge:

A general court-martial composed of officer and enlisted members convicted appellant of larceny, in violation of Article 121, Uniform Code of Military Justice, 10 USC § 921. The court-martial sentenced appellant to a bad-conduct discharge, confinement for 18 months, and reduction to the grade of Airman Basic. The convening authority reduced the period of confinement to 159 days but otherwise approved the sentence. The Court of Criminal Appeals affirmed the findings and sentence in an unpublished opinion.

This Court granted review of the following issue:

WHETHER THE SELECTION PROCESS OF APPELLANT'S COURT–MARTIAL WAS IMPROPER BECAUSE ENLISTED PERSONNEL IN THE RANK OF E–6 (TECHNICAL SERGEANT) WERE EXCLUDED FROM CONSIDERATION BY THE CONVENING AUTHORITY TO SIT ON APPELLANT'S COURT–MARTIAL PANEL.

We affirm, for the reasons set out below.

 The facts surrounding the selection of enlisted members for appellant's court-martial were uncontested. The staff judge advocate (SJA), erroneously believing that appellant was a technical sergeant (E–6) instead of a staff sergeant (E–5), instructed his staff to prepare a list of nominees in the grades of master sergeant (E–7) and above. The SJA testified that he avoids nominating members in the same grade as the accused because there is a risk of making an administrative mistake with respect to a nominee's date of rank and thereby inadvertently nominating a person junior to the accused. *See* Art. 25(d)(1), UCMJ, 10 USC § 825(d)(1) (court-martial members must be senior to accused). Thus, no technical sergeants were nominated. The SJA further testified that, if he had known that the accused was a staff sergeant, he would have added technical sergeants to the list of nominees. The defense "concede[d] that there was no bad faith" and that the failure to nominate technical sergeants was "just simply a mistake."

Defense counsel did not ask that the case be returned to the convening authority to select additional members or to select a new panel from a properly constituted list of nominees. Instead, defense counsel moved to dismiss the charges for lack of jurisdiction arising from an improperly constituted court-martial. The military judge denied the motion to dismiss.

Appellant argues that his court-martial was without jurisdiction because technical sergeants were impermissibly excluded from membership. The Government argues that the convening authority did not "improperly" rely on military grade as a criterion for selection and that any mistake in excluding technical sergeants from consideration was harmless error.

RCM 912(b)(1), Manual for Courts–Martial, United States (1995 ed.), provides that, when evidence is discovered that court members may have been selected improperly, a "party may move to stay the proceedings." RCM 912(b)(2) authorizes the military judge to stay the proceedings until the members have been properly selected. RCM 912(b)(3) provides that the issue of improper selection is waived by "[f]ailure to make a timely motion under this subsection," unless the improper selection violates RCM 501(a), 502(a)(1), or 503(a)(2). Defense counsel made no motion based on RCM 912(b)(1). However, because the Government does not argue waiver, we do not decide this case on that basis.

Article 25(d)(2) requires a convening authority to select court-martial members who, "in his opinion, are best qualified for the duty by reason of age, education, training, experience, length of service, and judicial temperament." RCM 502(a)(1) repeats the statutory qualifications set out in Article 25(d) and the eligibility requirements of Article 25(a)-(c) that a court-martial "member be on active duty with the armed forces" serving as a commissioned officer, a warrant officer un-

less "the accused is a commissioned officer," or an "enlisted person if the accused is an enlisted person and has made a timely request" for enlisted members.

■ A military accused is not entitled to have a representative cross-section of the community detailed to his or her court-martial. *United States v. Lewis,* 46 MJ 338, 341 (1997). On the other hand, members may not be selected solely on the basis of military grade. *United States v. Nixon,* 33 MJ 433 (CMA 1991). While it is permissible to look first at the senior grades for qualified court members, the lower eligible grades may not be systematically excluded. *United States v. Crawford,* 15 USCMA 31, 40, 35 CMR 3, 12 (1964); *United States v. Daigle,* 1 MJ 139 (CMA 1975); *United States v. Greene,* 20 USCMA 232, 43 CMR 72 (1970).

■ Furthermore, a court-martial may not be "stacked" to achieve a desired result. *United States v. Hilow,* 32 MJ 439, 440 (CMA 1991). Improper court stacking may occur by inclusion or exclusion. *See United States v. Smith,* 27 MJ 242 (CMA 1988) (female members selected because case involved sex crime); *United States v. McClain,* 22 MJ 124, 126 (CMA 1986) (systematic exclusion of junior officers and enlisted members in pay grade E–6 and below to avoid "unusual sentences"); *United States v. Daigle, supra* (lieutenants and warrant officers excluded); *see also United States v. Yager,* 7 MJ 171, 173 (CMA 1979) (permitted exclusion of soldiers in pay grades E–1 and E–2 as presumptively unqualified under Article 25(d)). Court stacking may occur if a subordinate stacks the list of nominees presented to the convening authority. *United States v. Hilow, supra.*

■ Court stacking does not deprive the court-martial of jurisdiction, but it is "a form of unlawful command influence." *Lewis,* 46 MJ at 341; *Hilow,* 32 MJ at 441. Thus, when an issue of court stacking is raised, "we may not affirm unless we are convinced beyond a reasonable doubt that the court members were properly selected." *United States v. Lewis, supra.*

■ An element of unlawful court stacking is improper motive. Thus, where the convening authority's motive is benign, systematic inclusion or exclusion may not be improper. *See Lewis, supra* at 340–41 (disproportionate number of female members detailed but no evidence of improper motives); *Smith,* 27 MJ at 249 (not improper to insist that "important segment of the military community—such as blacks, Hispanics, or women" be included).

In this case, the defense conceded at trial that the exclusion of technical sergeants was "just simply a mistake." There is no evidence to the contrary. Accordingly, we hold that the issue of unlawful court stacking was not raised.

■ Although there is no issue of unlawful court stacking, it is undisputed that technical sergeants were mistakenly excluded from consideration. Where administrative mistakes occur in detailing court members, such errors are nonjurisdictional and may be tested for prejudice. Art. 59(a), UCMJ, 10 USC § 859(a); *see United States v. King,* 28 MJ 397, 399 (CMA 1989) (nonjurisdictional error when unknown person changed panel to which case was referred); *United States v. Glover,* 15 MJ 419 (CMA 1983) (mistaken designation of general court-martial as special court-martial not prejudicial); *United States v. Ryan,* 5 MJ 97, 100 n. 3 (CMA 1978) (citing *United States v. Simpson,* 16 USCMA 137, 36 CMR 293 (1966) (nonjurisdictional error to delegate duty of deciding which panel will hear case)).

■ In this case, appellant has not asserted any specific prejudice and the record reflects none. For reasons not apparent from the record, appellant did not invoke the specific remedy provided in RCM 912(b)(2), even though he had ample opportunity to request such relief. Accordingly, we hold that appellant was not prejudiced by the administrative error that caused technical sergeants to be excluded from consideration for membership in his court-martial.

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

Chief Judge COX concurs.

**SULLIVAN, Judge (concurring):**

I write only to observe that perhaps some of these cases which challenge the convening authority's role and methods in selecting the members of the jury for the trial of appellant will be resolved if Congress passes legislation which will mandate random selection of jury members. *See, e.g.,* H.R. 3616 (pending legislation in the 105th Congress). This bill, cosponsored by Congressmen Skelton and Spence, if passed, will require the Secretary of Defense to study the possible use of randomly-selected juries in the military and to send Congress a report on this study not later than April 15, 1999.

**CRAWFORD, Judge (concurring):**

I concur with the principal opinion by Judge Gierke, but write separately to remind members of the bench and bar of their responsibilities.

The military criminal law system has progressed since Congress implicitly rejected a "chief [appellate] defense counsel" in 1951.[1] At present, the Army,[2] Air Force,[3] and Navy[4] have separate defense counsel programs eliminating command pressure on defense counsels. The Coast Guard, while not having a separate defense counsel service, permits the appointment of defense counsel from outside the District of the convening authority.[5] These programs enhance the independence of defense counsel to enable them to raise at the trial level issues concerning improper selections of potential members.

This Court has drawn a "distinction between the accusatorial process and the adjudicative stage" as to when and where command influence may be raised. *United States v. Weasler,* 43 MJ 15, 17 (1995); *see also United States v. Hamilton,* 41 MJ 32, 36

(1994). If command influence is known, or reasonably could be known in either the accusatorial stage or the selection process, failure to raise the issue constitutes waiver. *Id.* This rule is not designed to impede the rights of the accused, but to ensure professional conduct by the defense counsel as to issues that are known or reasonably could be known.

We have recognized other instances where command influence in the pretrial stages may be corrected by motion before trial, rather than raising the issue for the first time on appeal. This should not prove burdensome as counsel have not been shy about issues concerning Service Secretaries, *see, e.g., United States v. Kelly,* 40 MJ 558 (NMCMR 1994), and even actions against the Secretary of Defense, *United States Navy–Marine Corps. Court of Military Review v. Carlucci,* 26 MJ 328 (CMA 1988).

If the Court were to place a premium on raising these issues for the first time on appeal, the accused would unfairly benefit because the remand may be a number of years after the trial, when the witnesses and victims have moved or their memory has faded. In such instances, the criminal justice system would suffer when numerous cases are dismissed after such a remand. By requiring counsel to first raise the issues discussed above at trial, rather than on appeal, we may guarantee a fair, efficient system of military criminal law for the accused, the victim, and society.

**EFFRON, Judge (dissenting):**

Our precedents reflect three general categories of instances in which the court-martial panel-selection process improperly includes or excludes classes of potential members, with different repercussions.

---

1. J. Lurie, *Arming Military Justice* 222–23 (1992).

On January 11, 1973, Secretary of Defense Melvin Laird directed the Armed Services to revise their procedures to place defense counsel under the direct authority of the Judge Advocate General or his or her equivalent.

2. Chapter 6, Army Regulation 27–10, Military Justice (24 June 1996).

3. Para. 5.2.1.1, Air Force Instruction 51–201, Administration of Military Justice (3 October 1997).

4. Letter from Navy Judge Advocate General to Congressman Ike Skelton, dated August 30, 1996.

5. Article 3–C–2, Commandant Instruction M5810.1C, Coast Guard Military Justice Manual (C2) (27 October 1992).

## A

The first is where classes of potential members consciously are included or excluded for reasons other than to serve the panel-selection interests of Article 25, Uniform Code of Military Justice, 10 USC § 825. Such reasons, as reflected in our case law, include selection of members under the following circumstances: to avoid "light sentences" (*United States v. McClain*, 22 MJ 124, 126 (CMA 1986)); to include females in trials for sex crimes against female victims (*United States v. Smith*, 27 MJ 242 (CMA 1988)); and to limit the panel to "commanders and supporters of a command policy of hard discipline" (*United States v. Hilow*, 32 MJ 439, 440 (CMA 1991)). Because such selection criteria are used with a view towards affecting the result of the court-martial, such use has been treated as a form of unlawful command influence. *See* Art. 37(a), UCMJ, 10 USC § 837(a). Unlawful command influence of this sort may be raised for the first time on appeal and leads to reversal for new proceedings unless it can be determined clearly and affirmatively that the proceedings were unaffected. *See, e.g., McClain, supra* at 132 (any doubt as to propriety of selection "resolved in favor of the accused").

## B

The second category is where classes of members consciously are included or excluded for reasons that purportedly serve the criteria of Article 25 in some shorthand method. Our precedents include the following circumstances: exclusion of all grades E–6 and below and all junior officers (*United States v. McClain, supra* ); selection of only senior noncommissioned officers as the enlisted members of the panel (*United States v. Crawford*, 15 USCMA 31, 35 CMR 3 (1964)); selection of only lieutenant colonels and colonels as being the most mature and possessing the best judgment (*United States v. Greene*, 20 USCMA 232, 43 CMR 72 (1970)); and exclusion of all lieutenants and warrant officers (*United States v. Daigle*, 1 MJ 139 (CMA 1975)).

Such stereotyped and generalized shortcuts toward complying with Article 25 have been held unlawful as violative of that provision, with the exception of an exclusion of pay grades E–1 and E–2, which this Court in *United States v. Yager*, 7 MJ 171 (1979), said was permissible because of the very small possibility that such grades would meet the criteria in Article 25. These cases have not been analyzed in terms of unlawful command influence under Article 37(a), and they must be raised by objection at trial unless evidence is discovered only later. Because these cases involve an improper exercise of command authority, however, our cases have placed the burden on the Government to demonstrate lack of harm, rather than on appellant to prove prejudice.

## C

The final category of improper panel selection is where classes of potential members are included or excluded because of some simple, administrative mistake, unrelated to Articles 25 or 37(a). The present case appears to be in this third category. Here, all grades below E–7 were excluded because of the mistaken belief that appellant was an E–6. The purpose was to exclude any member of the same pay grade as appellant in order to avoid any possibility that such a member might be junior in date of rank to appellant. *See generally* Art. 25(d)(1) ("When it can be avoided, no member of an armed force may be tried by a court-martial any member of which is junior to him in rank or grade.").

When there has been such an administrative mistake, it does not reflect an intent to affect the court-martial, as with the first category of cases. Moreover, there is no improper shortcut in attempting to apply Article 25, as in the second.

Nonetheless, the improper exclusion of such a class of members constitutes error in the selection process. When such an error is not discovered until after trial, I would agree that reversal is not warranted in the absence of a specific demonstration of unfairness that prejudiced the proceedings.

When, as in this case, the claimed administrative error is discovered prior to com-

mencement of the trial on the merits, the situation is different. In such circumstances, a significant error in the member-selection process has been identified at a point at which it easily can be remedied, but the responsible officials knowingly and willfully have declined to correct the error.

It is well established that members of the armed forces—whose service and sacrifices protect the freedom of the general population—do not enjoy the same extent of constitutional rights as their civilian counterparts. One of the most significant differences is that servicemembers tried by court-martial do not have the right to be tried by a representative cross-section of the military population, which is a fundamental right guaranteed by the Sixth Amendment in civilian trials. Instead, servicemembers are tried by a panel of members personally selected by the commander who has referred the case to trial. Art. 25.

Under these circumstances, it is incumbent upon this Court to scrutinize carefully any deviations from the protections designed to provide an accused servicemember with a properly constituted panel. When a servicemember has done all he or she can do by putting the issue in the spotlight and asking for a timely correction, and the Government declines to correct the error, we should not countenance such disrespect for the protections of the rights of members of the armed forces.

In the present case, appellant provided timely notice of the error under circumstances where it could have been readily corrected. Having been rebuffed at trial, he is entitled to have an appellate court give him a new proceeding. I dissent from the majority's refusal to do so.