Chief Judge ERDMANN,
dissenting.
“The right to trial by fair and impartial members or a professional military judge is *146 the cornerstone of the military justice system.” United States v. Hilow, 32 M.J. 439, 442 (C.M.A. 1991). “Discrimination in the selection of court members on the basis of improper criteria threatens the integrity of the military justice system and violates the Uniform Code.” United States v. Daigle, 1 M.J. 139, 140 (C.M.A. 1976). Article 25(d)(2), UCMJ, 10 U.S.C. § 825(d)(2) (2012), does not set forth grade or rank as criteria for panel selection and “while it is permissible to appoint senior, qualified court members, the lower grades may not be systematically excluded.” United States v. Roland, 50 M.J. 66, 68 (C.A.A.F. 1999) (citations omitted). “[S]ys-temic exclusion of otherwise qualified potential members based on an impermissible variable such as rank is improper.” United States v. Dowty, 60 M.J. 163, 171 (C.A.A.F. 2004). While a panel does not have to be composed of a cross section of the military community, “[bjlanket exclusion of qualified officers or enlisted members in the lower grades is at odds with congressional intent and cannot be sustained.” United States v. Nixon, 33 M.J. 433, 434 (C.M.A. 1991).
As noted by the majority, this court has long recognized that in the member selection process, an accused must be provided “both a fair panel ... and the appearance of a fair panel.” United States v. Ward, 74 M.J. 225, 228 (C.A.A.F. 2015); see also United States v. Bartlett, 66 M.J. 426 (C.A.A.F. 2008); United States v. Kirkland, 53 M.J. 22 (C.A.A.F. 2000). Since this case reflects both the improper exclusion of potential members based on rank as well as the appearance of an improper selection process, I respectfully dissent from the majority’s opinion.
Background
The First Selection Process:
As in all eases of alleged improper member selection, the process utilized in the selection of the members is of critical importance. Prior to trial, the staff judge advocate (SJA) of the 1st Marine Logistics Group sent an email to subordinate commands soliciting member questionnaires from “officers in pay-grade 0-4 and above and enlisted personnel in paygrade E-8 and above.” After reviewing the questionnaires limited by rank, the SJA selected twelve members and four alternates and placed their names on a member selection worksheet that he then provided to the convening authority. The convening authority signed the selection worksheet without alteration and, at the same time, signed the convening order that assigned the members from the selection worksheet to Bartee’s panel.
During an Article 39(a), UCMJ, 10 U.S.C. § 839(a) (2012), session, trial defense counsel objected to the panel, arguing it was assembled in violation of Article 25. Specifically, defense counsel argued that the SJA had conceded that he had only solicited and included senior members when he created the selection worksheet. Trial counsel responded that the convening authority had been provided with the appropriate Article 25 advice and was aware that he Could select anyone in the command. Trial counsel added:
And we’ll just note for whatever it’s worth that in prior situations where this came up, we ended up with the same exact panel that was originally selected after going through the reconfirming. I—Yes, I understand I can pick whoever I want to, this is still the panel I want to go forward with.
Following further argument the military judge stated that the defense had raised evidence that there had been a systematic exclusion of certain ranks from the convening authority’s consideration. The military judge speculated that the situation could be rectified by “perhaps providing [the convening authority] an entire alpha roster, telling him, hey, you pick.” Ultimately the military judge recessed the hearing to allow the government time to determine its way ahead.
When the court reconvened, the government renewed its earlier arguments and also argued that there was no improper motive to stack the panel. The government provided the military judge with an affidavit from the SJA in which he explained the “top down” process he used to review the questionnaires he received from E-8s and above and 0-4s and above:
I start by looking members for [sic] possessing the requisite qualifications—this typically turns out to be more senior per *147 sonnel. In the event I cannot find individuals within the senior ranks that do not meet the Article 25, UCMJ, criteria, I then begin to look towards the junior ranks.
The military judge ruled that the panel appeared to be improperly selected because the SJA’s process of only soliciting enlisted members at paygrade E-8 and above and officer members at paygrade 0-4 and above was an exclusion based on rank. The military judge struck the panel as improperly convened under Article 25 and directed the convening authority to convene a new panel.
The Second Selection Process:
When the court reconvened the next day, the government provided the military judge with a new list of panel members selected by a different convening authority.[1] As with the first list, the second list had been prepared and submitted to the convening authority by the SJA, but this time the SJA also submitted the 1st Marine Logistics Group’s alpha roster. The second list deleted the members who had been on the original panel, but then reselected the same members, resulting in no change from the first panel that the military judge determined was improperly convened. The government also provided the court with an unsworn memorandum which, although signed by the convening authority, had been prepared for his signature by the SJA. The memorandum stated, in part:
S. I understand that, at any time during the process of selection of members for this court-martial, I could have selected any member of my command senior to the accused who I felt possessed the qualifications outlined by the reference irrespective of rank, group or class and did so in the previous panel in this ease.[2]
4. I have roughly 8,000 Marines and sailors under my command at any moment in time. I could have selected any of them that possess the qualifications in the reference, but I know these individuals personally and selected them specifically because I am convinced they meet the qualifications of the membership.
Following further arguments by the parties, the military judge ruled from the bench:
I think without some evidence that there was improper motive, [the convening authority] personally chose these candidates, he is qualified and authorized to convene a general court-martial, they all meet the Article 25 criteria, [and] there is no evidence of an improper purpose or improper motive in putting this panel together.
As for the SJA’s top down approach in the initial solicitation of panel members, the military judge completely reversed his initial determination:
Based on the Article 25 criteria, I can’t say that [the SJA], in using the top-down approach is somehow a wrong application of Article 25.1 don’t see how that is designed to systematically exclude anybody....
They are the same members as we had yesterday, but I think that easily could underscore the fact that these are the folks the General knew, the General was comfortable with, and the General correctly applied the Article 25 criteria. Even though the selection—the nomination process may have had its flaws, that the General correctly applied the Article 25 criteria the first time around.[3]
(Emphasis added.)
The defense informed the military judge that because they felt there was still a defect in the panel, they were forced to abandon *148 their request for trial by members and requested a trial by military judge alone. The military judge responded by informing the defense that he would not grant the request for a military judge alone if it was based on the defense position that the panel was improperly selected. The defense then stated that the panel selection process was not the sole reason for them request for a military judge-alone trial. The military judge subsequently granted the request for trial by military judge alone.[4]
The United States Navy-Marine Corps Court of Criminal Appeals (CCA) considered the issue of proper panel selection and whether Bartee had been afforded both a fair panel and the appearance of a fair panel. United States v. Bartee, No. NMCCA 201500087, 2016 CCA LEXIS 11, at *12-13, 2016 WL 154628, at *3-5 (N-M. Ct. Crim. App. Jan. 12, 2016) (unpublished). The lower court held there was no cause to question the fairness of the convening of the second panel. 2016 CCA LEXIS 11, at *13-14, 2016 WL 154628, at *5 (citing Ward, 74 M.J. at 228).
Specifically, the CCA concluded that the convening authority and SJA had no improper motive to stack the member pool and noted that the convening authority had stated that he knew the selected members and believed them to be the best qualified under the Article 25 criteria. 2016 CCA LEXIS 11, at *13-14, 2016 WL 154628, at *5. In addressing whether the process resulted in the appearance of a fair panel, the CCA held that any appearance of impropriety had been resolved by the convening authority’s personal knowledge of the members and his consultation of the entire command roster. 2016 CCA LEXIS 11, at *13, 2016 WL 154628, at *5. Therefore, the CCA held, there was no reason to “question the essential fairness and integrity of the court-martial,” and affirmed the findings and sentence. 2016 CCA LEXIS 11, at *14-15,2016 WL 154628, at *5.
Discussion
Before this court there is no challenge by either party to the militaiy judge’s initial ruling that the-panel was improperly convened. Therefore, the sole issue in this case is whether the second convening authority’s resubmission of the same panel a day later, which differed from the initial submission only by the convening authority’s proximity to the alpha roster and his statement that he personally knew the members selected, was sufficient to cure the taint of the initial improper solicitation and selection.
This court has previously approved member selection processes that include the SJA seeking nominations from commanders and presenting recommendations to the convening authority. See United States v. Kemp, 22 U.S.C.M.A. 162, 155, 46 C.M.R. 162, 155 (1973). However, “[t]his nomination process may not systematically exclude or include a certain category of servicemembers. When the request for nominations does improperly include or exclude certain members, this Court will ensure that those actions do not taint the selection by the convening authority.” Roland, 50 M.J. at 69. Where an improper selection process has been utilized, this court has held that subsequent action by a convening authority in compliance with Article 25 will not, by itself, erase the taint. Id. at 68-69; Hilow, 32 M.J. at 442 (“[W]e have never held that the impact of [such] improper assistance can be ignored solely on the basis of the convening authority’s official duty to personally select the members in accordance with the criteria of Article 25(d)(2).”).
The selection of panel members is a well-litigated subject in the militaiy justice system as it has been recognized since at least 1964 that Article 25 “implies all ranks and grades are eligible for appointment.” United States v. Crawford, 16 U.S.C.M.A. 31, 58, 35 C.M.R. 3, 28 (1964); see also Greene, 20 U.S.C.M.A. at 239, 43 C.M.R. at 78. Kirkland and Greene, in particular, provide relevant precedent for our analysis of this case. In Kirkland, the special court-martial convening authority had requested subordinate commanders to nominate qualified personnel to be potential panel members. 63 M.J. at 23. *149 However, the commanders were provided with a nomination chart from the legal office that only included a column for the ranks of E-7, E-8, and E-9, with no place to list a nominee in a lower grade. Id. Consequently no individuals in lower enlisted grades were nominated. Id. at 23-24. Although the convening authority was informed of the Article 25 requirements and that he could look outside the nomination list, he only appointed those enlisted members on the list. Id. at 25. Upon this foundation, we found the exclusion of potentially qualified members below the grade of E-7 to be improper. Id,; see also United States v. McClain, 22 M.J. 124, 130-31 (C.M.A. 1986) (rejecting the systematic exclusion of junior officers and enlisted members in pay grade E-6 and below for the improper purpose of avoiding lenient sentences). Ultimately, we held that “where [there is] an unresolved appearance that potentially qualified court members ... were excluded, reversal of the sentence is appropriate to uphold the essential fairness and integrity of the military justice system.” Kirkland, 53 M.J. at 26 (internal quotation marks omitted) (citation omitted).
Similarly, in Greene, the originally proposed panel consisted of officers in the grade of lieutenant through colonel. 20 U.S.C.M.A. at 236,43 C.M.R. at 75. However, the chief of military justice rejected that panel and directed that a new panel be submitted consisting only of officers in the grade of lieutenant colonel and above. Id. at 237, 43 C.M.R. at 77. This second list was adopted by the convening authority. Id. at 234, 43 C.M.R. at 74. Greene objected to the selection process for its exclusion of lower ranks. Id. at 234, 43 C.M.R. at 74. The military judge agreed and subsequently ordered the government to have the convening authority also consider officers in lower ranks in selecting the panel. Id. at 235, 43 C.M.R. at 75. The convening authority reconsidered his selection and resubmitted the same list, finding that those individuals were the best qualified under Article 25. Id. at 235-36,43 C.M.R. at 75-76. On that basis, Greene elected to be tried by military judge alone. Id. at 236, 43 C.M.R. at 76.
The Court of Military Appeals held that, under the circumstances, including the convening authority’s reconfirmation of the same panel, there was “a reasonable doubt as to whether the hurried decision to remain with this court was an unfettered one.” Id. at 238, 43 C.M.R. at 78. The court ultimately reversed Greene’s conviction as it could not “stand if [the accused] abandoned his right (and was tried by military judge alone) to avoid trial before an improperly selected panel.” Id. at 239,43 C.M.R. at 79.
While the majority relies on the Dowty factors in its analysis of the panel selection process, I find those factors provide little support for its position. The Dowty factors include:
1. Improper motive to “pack” the member pool;
2. Systemic exclusion of otherwise qualified members based on an impermissible variable like rank; and
3. Good faith efforts to be inclusive so courts-martial are open to all segments of the military community.
Dowty, 60 M.J. at 171.
As to the first factor, the record reveals that the SJA’s primary motive was to improperly start the (top-down) process with a list of senior panel members, such that only if he could not find satisfactory senior members, he would work his way down through the ranks. The second factor needs little discussion as both lists were the admitted products of a system that excluded every member of the command under 0-4 and E-8. As to the third factor, intentionally excluding a majority of potential panel members from consideration on the sole basis of rank is the antithesis of good faith efforts to be inclusive.
The military judge’s second decision was ■based on his finding that there was no evidence of an improper motive on the part of the SJA and because the second convening authority knew the members and applied the Article 25 criteria. At no point in his second ruling did the military judge discuss whether the adoption of a list that was based upon an improper selection criteria, was improper or whether the selection process gave the appearance of a fair panel. Furthermore, while *150 the CCA did explain the issue of the appearance of a fair panel, it did not address how the proximity of the alpha list and the convening authority’s personal familiarity with the selected members somehow ameliorated the fact that-the panel was the product of an improper “[blanket exclusion of qualified officers or enlisted members in the lower grades.” See Nixon, 33 M.J. at 434.
In this case, both the military judge and the CCA held that the initial selection was a systematic exclusion of qualified members, based solely on rank.[5] After the military judge struck the initial list, the S JA provided the convening authority with the same improperly solicited list for his signature. The only difference in the process was that this time the convening authority was also given a physical copy of unit’s alpha roster—a list that included over 8,700 names. As predicted by trial counsel, the convening authority merely “reconfirmed” the same panel.
The fact that the second convening authority was told he had the right to chose any member under his command does not ameliorate the initial error of excluding members based on rank in the selection worksheet.[6] See Kirkland, 53 M.J. at 24-25. Nor does the fact that the convening authority was handed the alpha roster remedy the error, as there is simply no evidence he ever consulted it— despite the COA’s factual finding that he did. Therefore, the taint of the first panel was transferred to the second panel when the same, improperly selected members were reconfirmed by the convening authority—particularly in light of trial counsel’s reference to an in-place plan to do so.[7]
The future implications of the majority’s holding are troubling. It is not difficult to envision that when a panel is held to be solicited in violation of Article 25, a convening authority need only be provided with an alpha list of his command, state that he knew he could select anyone in his command, and then reinstate the improperly convened panel with impunity. This would allow convening authorities to end-run decades of this court’s precedent on the prohibition of excluding potential panel members on the basis of rank, and select only the most senior of panels, under the protection of our newest ruling. See Kirkland, 53 M.J. at 24; Daigle, 1 M.J. at 141; Greene, 20 U.S.C.M.A. at 239, 43 C.M.R. at 79. This cavalier attitude toward the requirements of Article 25, on the part of the command and apparently disseminated to trial counsel should not be tolerated.
When the convening authority selected the same improperly convened members to the second panel, the taint of the initial panel remained, thus depriving Bartee of both a fair panel and the appearance of a fair panel. See Ward, 74 M.J. at 228. Therefore, because the improper exclusion based on rank was not resolved by the convening authority’s reselection of the same list, and in order to uphold the essential fairness and integrity of the military justice system,[8]1 would set aside the findings and sentence and remand the matter for a rehearing with a properly selected panel.

. The commanding general and convening authority of the 1st Marine Logistics Group was out of the area at the time of the initial convening order. The chief of staff, acting as the commander and convening authority, selected the initial list of panel members. However, prior to the submission of the second list of panel members, the commanding general had returned and reas-sumed his authority as the convening authority.

. Prior to submission of the second list, the second convening authority had replaced two members of the original panel due to their unavailability. However, while the second convening authority’s memorandum refers to actions taken with respect to the initial panel, that convening authority did not convene the initial panel.

.Again, the commanding general did not act as convening authority "the first time around” but rather his chief of staff was the convening authority in his absence.

. In United States v. Greene, 20 U.S.C.M.A. 232, 239, 43 C.M.R. 72, 79 (1970), the Court of Military Appeals reversed a conviction where the appellant selected a military judge-alone trial to avoid court-martial before an improperly selected panel.

. As noted, while the military judge appeared to retreat from this initial holding, the CCA clearly agreed with the military judge’s initial holding that the first panel was improperly selected.

. The initial convening authority had also been informed that he could select anyone in the command and the military judge struck the list he submitted as improperly excluding members on the basis of rank.

. Analyzing a similar situation, the Court of Military Appeals in McClain, held:
The military judge found that the convening authority "adhered to the standards of Article 25 in making this selection.” This finding, however, is not adequate to purge from the selection process the staff judge advocate's improper purpose of avoiding lenient sentences. In this connection, we note that—because "[djiscrimination in the selection of court members on the basis of improper criteria threatens the integrity of the military justice system and violates the Uniform Code,” see United States v. Daigle, 1 MJ. at 140—this Court is especially concerned to avoid either the appearance or reality of improper selection.
22 M.J. at 132 (alteration in original).

. McClain, 22 M.J. at 133 (Cox, J., concurring in the result); Kirkland, 53 M.J. at 25.