UNITED STATES, Appellee

v.

Frank L. LEWIS III, Senior Airman
U.S. Air Force, Appellant.

No. 96–0958.
Crim.App. No. 31270.

U.S. Court of Appeals for
the Armed Forces.

Argued Feb. 5, 1997.

Decided Aug. 18, 1997.

For Appellant: *Major Ormond R. Fodrea* (argued); *Colonel David W. Madsen* (on brief); *Colonel Jay L. Cohen* and *Lieutenant Colonel Kim L. Sheffield.*

For Appellee: *Captain Deborah M. Carr* (argued); *Colonel Theodore J. Fink* and *Lieutenant Colonel Michael J. Breslin* (on brief); *Major John H. Kongable.*

## Opinion of the Court

GIERKE, Judge:

A general court-martial at Andersen Air Force Base (AFB), Guam, composed of officer and enlisted members, convicted appellant, contrary to his pleas, of attempted voluntary manslaughter, assault, and aggravated assault, in violation of Articles 80 and 128, Uniform Code of Military Justice, 10 USC §§ 880 and 928, respectively. The adjudged and approved sentence provides for a dishonorable discharge, confinement and partial forfeiture of pay for 5 years, and reduction to the lowest enlisted grade. The Court of Criminal Appeals affirmed the findings and sentence in an unpublished opinion.

We granted review of the following issue: *

WHETHER THE MILITARY JUDGE ERRED TO THE PREJUDICE OF APPELLANT WHEN HE DENIED THE MOTION TO DISMISS BASED UPON UNLAWFUL COMMAND INFLUENCE IN THE MEMBER SELECTION PROCESS.

We resolve this issue against appellant for the reasons set out below.

The victim of the offenses was appellant's wife, Senior Airman Jennifer Lewis. Appellant asserts that the convening authority exercised unlawful command influence by stacking his court-martial with female members.

The issue was raised by timely motion at trial. Although defense counsel mentioned both gender and race, the primary thrust of the defense motion was that a disproportionate number of female members had been detailed to appellant's case, as well as to other cases in which males were accused of crimes against females.

Trial defense counsel asserted that the original convening order in appellant's case listed ten members, five of whom were female. When appellant requested enlisted members, two female officers were relieved and one female enlisted member was added, resulting in a panel of five male and four female members.

Trial defense counsel requested and received the charge sheets and court-martial convening orders for all general and special courts-martial convened at Andersen AFB during the preceding 3 years. These documents are summarized in the Appendix to this opinion.

Appellant also presented a unit strength report showing that as of May 25, 1993, there were a total of 2347 enlisted members of the unit, of which 342 were female, and 195 officers, of which 28 were female.

Sergeant (Sgt) Karen Hansen, a prosecution witness, testified that her duties included preparing the lists of nominees for courts-martial at Andersen AFB. She was absent when the panel of nominees for appellant's case was prepared. It was prepared by a co-worker, Sgt Bertling, whom Sgt Hansen had trained. Sgt Bertling did not testify, but Sgt Hansen testified that Sgt Bertling would have followed the same standard procedures for assembling a panel of nominees that she would have followed.

Sgt Hansen described the nomination process as follows:

Well, we're notified when members are going to be needed for the order. So I have a binder that I have all the [court member] questionnaires in, and in the front of the binder is a listing with all the courts and then all the members that were on that court, and I generally try not to use those members repeatedly. And I pull out the alpha roster, and I go through the alpha roster and just go down the list, looking for people that have a generally large open window, because we never know when the court date is.

---

* We also granted review of the following issue: "Whether the findings and sentence should be set aside due to undue delay in the post-trial pro-cessing of appellant's case." For the reasons set out in *United States v. Hudson*, 46 MJ 226 (1997), we resolve this issue against appellant.

Sgt Hansen testified that no one tells her who to nominate. She explained further:

We only want a good selection, rank wise, and just going down through the alpha roster, starting with the colonels down, and we compile a list of approximately 12 to 13 because it's a general court-martial. And like I said, we get them with a large window. I usually call them up and ask them, over the phone, what their leave and TDY [temporary duty] schedule is.

She testified that race and gender are not factors in compiling the list. When questioned by defense counsel before trial, she told them that it was "uncharacteristic" to have five female members on a court-martial, but that she "didn't realize there were five females on there." Regarding the data furnished to defense counsel concerning previous cases, Sgt Hansen testified that she had no explanation for the reason that three females were detailed in two of the cases.

Sgt Hansen testified that of the 28 female officers assigned to Andersen AFB, some, such as the staff judge advocate (SJA) and an officer assigned to the Office of Special Investigations, could not be detailed to courts-martial.

Lieutenant Colonel Martha Fred, the base SJA, testified that she was unaware of anyone trying to influence Sgt Hansen and Sgt Bertling in the compilation of the lists of nominees. She had not been asked for advice on selection of court members and was aware of no improprieties in the selection process. She had no explanation for the disproportionate number of female members detailed to hear appellant's case. She conceded that it was possible that one of her noncommissioned officers deliberately nominated more women, but she testified, "I have no reason to believe that they did that, and I don't know of any pressure that was placed on any of the paralegals, on this case or any other case, to make the panel anything other than a random selection."

Without defense objection, trial counsel offered and the military judge admitted an affidavit from the general court-martial convening authority, Major General (MajGen) Burr. In his affidavit, MajGen Burr recited that he selected the panel "from a list of potential members provided to me by the Commander, 633 Air Base Wing." He explained his selection process as follows:

In the process of making my selection I reviewed the data sheets provided to me concerning each potential member. Those data sheets gave me information concerning rank and date of rank, time in service (both commissioned and enlisted), current and previous duty assignments, educational level, military service schools, awards and decorations, previous court-martial and administrative board experience, and projected TDY, leave, PCS [permanent change of station], DOS [date of separation] and retirement information. I weighed all those factors in determining who, in my judgment, was best suited by virtue of their age, education, training, experience, length of service and judicial temperament to serve as a court-member, and those were the individuals I selected. *The data sheets do reflect race and sex, but these are factors I do not consider, absent a request from defense, normally in administrative boards, for minority members.*

(Emphasis added.)

Trial counsel also presented a list of ten officers who were nominated by the wing commander, a special court-martial convening authority, for appellant's case. Of the ten nominees, five were female. The wing commander lined through the name of one female officer, Major (Maj) Ida Jones, because she was scheduled for temporary duty. MajGen Burr overruled the wing commander and detailed Maj Jones to the panel.

Trial counsel also presented evidence that, in response to appellant's request for enlisted members, MajGen Burr received a list of five enlisted nominees, four male and one female. Although the SJA recommended that MajGen Burr select all five nominees, he selected only four, including the one female. In accordance with the SJA's recommendation, MajGen Burr relieved four officers, including one female. For reasons not apparent from the record, he also excused the aforementioned Maj Ida Jones, a female.

The final panel was composed of five males and four females.

The military judge denied the defense challenge for cause of the entire panel, finding that "there [was] no evidence of record to support a conclusion that there ha[d] been unlawful command influence in this case in the selection of the court members." Regarding the number of female members, the military judge found, "I cannot conclude from the evidence why it was that the number of females were selected that were selected [sic], but there is no evidence for me to conclude from that fact that there was any impropriety in the selection of those female members."

During *voir dire*, the military judge advised the court members of their duty to remain impartial throughout the trial. Defense counsel did not question any of the female members about potential gender bias, *i.e.*, whether they would be more likely to believe a female victim instead of an accused male aggressor, and did not explore the female members' attitudes about sentencing in cases of a male assailant and a female victim.

The military judge sustained a defense challenge of a female officer because of her unwillingness to consider "no punishment" as a sentencing option and a defense challenge of a female noncommissioned officer because she had been the victim of spouse abuse. The defense declined to challenge another female officer who disclosed that her aunt was a victim of spouse abuse, even though the military judge invited defense counsel to challenge her. Finally, defense counsel declined to exercise a peremptory challenge, even though two female members still remained on the panel. Under these circumstances, appellant's claim of court stacking "rings hollow" in light of his refusal to exercise challenges against the members he contends were detailed to ensure a conviction and heavy sentence. *See United States v. Lavender*, 46 MJ 485, 489 (1997).

■ In courts-martial, an accused is not entitled to a panel that represents a cross-section of the eligible military population. *United States v. Loving*, 41 MJ 213, 285

(1994), *aff'd on other grounds*, —— U.S. ——, 116 S.Ct. 1737, 135 L.Ed.2d 36 (1996). Thus, to the extent that appellant contends he was deprived of his Sixth Amendment right to a jury which is a fair cross-section of the community, he is not entitled to relief.

■ Even though an accused is not entitled to a panel of members that represents a fair cross-section of the military community, it is well-settled that "court packing" is not permissible. *United States v. McClain*, 22 MJ 124, 132 (CMA 1986). Similarly, deliberate stacking of the pool of potential court members by a subordinate for the convening authority is a form of unlawful command influence. *United States v. Hilow*, 32 MJ 439, 440 (CMA 1991).

■ Assignment of women to court-martial panels to "achieve a particular result as to findings or sentence" is prohibited. *United States v. Smith*, 27 MJ 242, 250 (CMA 1988). As a result, when an issue of unlawful command influence in the form of court packing is raised, we may not affirm unless we are convinced beyond a reasonable doubt that the court members were properly selected. *See McClain*, 22 MJ at 132, quoting *United States v. Greene*, 20 USCMA 232, 238, 43 CMR 72, 78 (1970) ("[W]e are not convinced that an improper standard was not used for the selection of the members of this court."); *see also United States v. Thomas*, 22 MJ 388, 394 (CMA 1986) ("[N]o reviewing court may properly affirm findings and sentence unless it is persuaded beyond a reasonable doubt that the findings and sentence have not been affected by the command influence."). On the other hand, there is no prohibition against a convening authority's insisting that "no important segment of the military community—such as blacks, Hispanics, or women—be excluded from service on court-martial panels." *Smith*, 27 MJ at 249.

■ The evidence presented by appellant at trial does not adequately reflect the pool of individuals eligible and available to serve as court members. *See Loving*, 41 MJ at 286 (appellant must show eligible pool of members to support claim of systematic exclusion). With respect to the officer members,

it does not reflect how many officers were ineligible or disqualified because of their involvement in law enforcement or the investigation of this case, and it does not reflect how many were unavailable because of absence from the command or operational duties. With respect to the enlisted members, the defense evidence lacks the same information. In addition, it fails to identify how many enlisted airmen were presumptively unqualified because they lacked the experience and maturity contemplated by Article 25, UCMJ, 10 USC § 825. *See United States v. Yager,* 7 MJ 171 (CMA 1979) (exclusion of personnel below pay grade E–3 permissible).

The evidence presented by appellant and summarized in the Appendix shows only that women routinely served on court-martial panels, regardless of the offenses involved. In only two cases prior to appellant's were more than two women detailed to a panel. One of those cases involved conspiracy and larceny; the other involved indecent acts by a male accused against a female child.

Statistically, appellant's case was an anomaly, with five women detailed and four women actually sitting on the case. While no one could explain why so many women were detailed to appellant's case, no one could show a pattern of court stacking or improper actions or motives on the part of the Government. *See Loving,* 41 MJ at 285 (systematic exclusion or underrepresentation not raised by population of single panel). In short, appellant failed to produce sufficient evidence to raise the issue of court stacking, either as a consistent practice in the command or in his individual case. Thus, as in *Loving,* "[a]ppellant has presented no evidence that court members were either added or excluded for reasons that violate the Constitution or Article 25." 41 MJ at 287. Accordingly, the military judge did not err by denying the defense challenge of the panel.

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

Chief Judge COX and Judges CRAWFORD and EFFRON concur.

## Appendix

| Accused | GCM/SPCM | Charges | Male/Female |
|---|---|---|---|
| Stives | GCM | Indecent acts with female child | 6/2 |
| B. Cruz | GCM | Conspiracy, larceny | 7/2 |
| F. Cruz | GCM | Conspiracy, drugs | 8/0 |
| Lizama | GCM | Conspiracy, larceny | 8/3 |
| Williams | GCM | Maltreatment (sexual harassment) | 9/2 |
| Viloria | GCM | Desertion | 5/2 |
| Dutra | GCM | Drugs | 7/1 |
| Connolly | GCM | Larceny | 7/2 |
| Jones | GCM | Larceny, Mail theft | 8/0 |
| Roberto | GCM | Drugs | 10/0 |
| Geile | GCM | Assault (nonsexual) | 7/2 |
| Simoy | GCM | Murder, Robbery, Conspiracy | 12/1 |
| Daulton | GCM | Indecent acts with female child | 7/3 |
| Brown | SPCM | Assault, threat (male & female victims) | 4/1 |
| Grady | SPCM | Drugs, threat, assault (male & female victims) | 5/0 |
| Mount | SPCM | Drunk driving | 4/2 |
| Shackelford | SPCM | Drugs | 4/1 |
| Reid | SPCM | Drugs | 5/0 |

---

SULLIVAN, Judge (concurring):

This is a simple case. The defense argues that there was command influence in selecting the jury. Yet, after raising this issue at trial, questioning a witness to determine who compiled the jury selection list, and deter-

mining that that person was Sergeant Bertling, the defense failed to call this key witness. No reason is provided in the record for this defense failure to offer evidence by testimony or by affidavit from this witness. Even at the court below, there was no evidence offered from this key witness. In my view, appellant is estopped now from raising this issue on appeal. An accused must make some hard choices at a court-martial and must live with the consequences of these choices in the appellate process.