UNITED STATES, Appellee,

v.

Kurt M. BERTIE, Specialist,
U.S. Army, Appellant.

No. 98–0232.
Crim.App. No. 9600846.

U.S. Court of Appeals for
the Armed Forces.

Argued Dec. 16, 1998.

Decided July 15, 1999.

Gierke, J., filed concurring opinion.

SULLIVAN, J., delivered the opinion of the Court, in which COX, C.J., and CRAWFORD and EFFRON, JJ., joined. GIERKE, J., filed a concurring opinion.

For Appellant: *Captain Angelines McCaffrey* (argued); *Colonel John T. Phelps, II, Lieutenant Colonel Adele H. Odegard,* and *Captain Paul Fiorino* (on brief).

For Appellee: *Captain Marcella Edwards–Burden* (argued); *Colonel Russell S. Estey, Lieutenant Colonel Eugene R. Milhizer,* and *Major Lyle D. Jentzer* (on brief).

Judge SULLIVAN delivered the opinion of the Court.

In the Spring of 1996, appellant was tried by a general court-martial consisting of offi-

cer and enlisted members at Fort Drum, New York. Contrary to his pleas, he was found guilty of assault with a dangerous weapon in violation of Article 128, Uniform Code of Military Justice, 10 USC § 928. On May 8, 1996, he was sentenced to a dishonorable discharge, confinement for 6 months, total forfeiture, and reduction to Private E–1. On September 27, 1996, the convening authority approved the sentence. The Court of Criminal Appeals subsequently affirmed the findings and sentence in an unpublished decision dated October 28, 1997.

On June 11, 1998, this Court granted review of the following issue personally asserted by appellant pursuant to *United States v. Grostefon*, 12 MJ 431 (CMA 1982):

WHETHER THE CONVENING AUTHORITY STACKED THE COURT–MARTIAL WITH SENIOR OFFICERS AND NCO'S.

We hold that the record of trial does not show that court-martial stacking occurred or reasonably appeared to occur in this case. *See United States v. Nixon*, 33 MJ 433, 434–35 (CMA 1991). Accordingly, we affirm.

The charges against appellant arose out of an incident in which he used a knife while fighting another soldier. The victim suffered a knife wound which began at the bridge of his nose and continued down to the left side of his cheek. The members of appellant's court-martial found him guilty of assault with a dangerous weapon. The composition of this court-martial panel is the subject of the present appeal.

The record shows that court-martial nominees were requested and provided in all grades down to private first class. Originally, the convening authority detailed a panel consisting of one colonel, one lieutenant colonel, three majors, one command sergeant major, two first sergeants, and two master sergeants to try appellant. Trial defense counsel moved *in limine* to have this panel withdrawn because of selective exclusion of junior officer and enlisted members, and he requested a more representative panel be appointed in its place. In his pretrial motion, entitled "Motion for Appropriate Relief

(Withdraw Charges, Court–Ordered Panel Member Selection Process, Selection of a Court–Martial Panel Representing a Cross–Section of the Fort Drum Military Community)," trial defense counsel asserted that the court-martial panel was improperly selected on the basis of rank, or at least appeared to be improperly selected on this basis. In arguing his position to the military judge, defense counsel stated: "[T]here is no smoking gun in this case. Actions speak louder than words. In this case, the actions are that *there are no panel member[s] lower than the rank of Major on this panel, as far as officers.*" (Emphasis added.)

After introducing evidence concerning prior convening orders and the statistical make-up by grade and rank of soldiers at Fort Drum, defense counsel continued his argument:

You will have an opportunity to look at the documents, and no First Lieutenant and no Second Lieutenant was selected. No Warrant Officer of any grade up to the grade of CW5 was selected. *No panel member was selected to be an alternate or a primary court member who was below the rank of E7 in the enlisted grades.* There were nominees given to the Commanding General throughout which were fairly representative of the—well, not completely representative number-wise, but there were individuals from each different grade category. *But, the Commanding General himself chose to pick senior individuals on his panels.* Whether—so, there's no smoking gun. What we have is the end product. And, it appears from looking at that, that certainly, rank is the ultimate criteria he has used. Now, there are CW5s and CW4s and CW3s and CW2s who have years and years of experience, and of whom may certainly have the Article 25 criteria, and meet the Article 25 criteria better than some of the selectees. There are Sergeants and Staff Sergeants who have years and years and years of experience in the Army; Sergeants who have been in and out of the Army and came back into the Army later in life. So, by limiting the selection process, *the end*

*result—it presents the—certainly, the appearance that the panel is stacked—that the panel is hand-picked, and that the only voices that are going to be heard back in the deliberation room are career officers and noncommissioned officers who, most likely, are going to mirror—or, are more likely, according to—from looking at it from the average person's perspective— looking at it from Specialist Bertie's perspective, are much more likely to mirror the views of the Commanding General than individuals selected through the cross-section—a fair representation of the Fort Drum community.* So, because of that, that's the distinction. There is no smoking gun in this case, and we're not saying that there is. We're asking the court to look at the end result. And, it's clear that the end result—that this is an impermissible—that rank has been used as an impermissible basis for selection of panel members at Fort Drum.

(Emphasis added.)

The military judge denied the motion. He then entertained any challenges against the members by either side. He granted the defense's sole challenge for cause against one of the first sergeants. Additionally, the defense peremptorily challenged one of the majors. The Government did not challenge any member for cause; nor did it use its peremptory challenge. Thus, the court-martial panel that tried appellant finally consisted of one colonel, one lieutenant colonel, two majors, one command sergeant major, one first sergeant, and two master sergeants.

———  ———  ———

Before this Court, appellant, an E–4, argues that he was denied a fair trial because his convening authority "systematically excluded lower ranking soldiers" from his court-martial panel in violation of Article 25.[1] Final Brief at 2. He notes that the court-martial panel detailed to sit in his case contained no junior officers (0–1 to 0–2), no warrant officers (WO–1 to WO–5), and no junior enlisted persons (E–4 to E–7). He further notes statistics presented at trial that showed that, "since these standing panels were adopted [around a year], no general court-martial tried at Fort Drum has included a company grade officer, warrant officer, or enlisted soldier below the rank of sergeant first class." *Id.* at 6. Relying on this Court's decision in *United States v. Nixon, supra,* he concludes that it is "abundantly obvious" that the convening authority impermissibly relied on rank to select his court-martial panel in violation of Article 25. *Id.* at 5.

Article 25(d)(2) provides that the convening authority must detail as members those who, "in his opinion, are best qualified for the duty by reason of age, education, training, experience, length of service, and judicial temperament." This procedure is substantially different from civilian jury selection practice. *See* Guy Glazier, *He Called For His Pipe, And He Called For His Bowl, And He Called For His Members Three—Selection*

---

1. Article 25, Uniform Code of Military Justice, 10 USC § 825, states in pertinent part:

   § 825. Art. 25. Who may serve on courts-martial

   (a) *Any commissioned officer* on active duty is eligible....

   (b) *Any warrant officer* on active duty is eligible....

   (c)(1) *Any enlisted member* of an armed force on active duty who is not a member of the same unit as the accused is eligible ..., but he shall serve as a member of a court only if, before the conclusion of a session called by the military judge under section 839(a) of this title (article 39(a)) prior to trial or, in the absence of such a session, before the court is assembled for the trial of the accused, the accused personally has requested orally on the record or in writing that enlisted members serve on it.

   * * *

   (d)(1) When it can be avoided, no member of an armed force may be tried by a court-martial any member of which is junior to him in rank or grade.

   (2) *When convening a court-martial, the convening authority shall detail as members thereof such members of the armed forces as, in his opinion, are best qualified for the duty by reason of age, education, training, experience, length of service, and judicial temperament.* No member of an armed force is eligible to serve as a member of a general or special court-martial when he is the accuser or a witness for the prosecution or has acted as investigating officer or as counsel in the same case.

   (Emphasis added.)

*Of Military Juries By The Sovereign: Impediment To Military Justice*, 157 Mil. L.Rev. 1, 34–37 (1998) (discussion of state and federal jury selection practices). Our case law, however, makes clear that the intent or purpose of the convening authority in executing this procedure is an essential factor in determining compliance with Article 25. *See, e.g., United States v. Daigle*, 1 MJ 139, 141 (CMA 1975) (observing a "fixed policy" to exclude certain members); *United States v. McClain*, 22 MJ 124, 130–31 (CMA 1986) (focusing on intent rather than impact of convening authority selection action); *cf. United States v. Upshaw*, 49 MJ 111, 113 (1998); *United States v. Lewis*, 46 MJ 338, 340–41 (1997).

▮ More particularly, we have generally recognized that, "[i]n courts-martial, an accused is not entitled to a panel that represents a cross-section of the eligible military population." *Lewis, supra* at 341. However, we have also held that *deliberate and systematic* exclusion of lower grades and ranks from court-martial panels is not permissible. *See Nixon*, 33 MJ at 434–35; *United States v. Hilow*, 32 MJ 439 (CMA 1991); *United States v. McClain* and *United States v. Daigle*, both *supra*; *United States v. Greene*, 20 USCMA 232, 43 CMR 72 (1970); *United States v. Crawford*, 15 USCMA 31, 35 CMR 3 (1964). This prohibition does not apply, of course, when the excluded members are junior in rank or grade to the accused. *See* Art. 25(d)(1). Moreover, we have also held that a convening authority may not, *in an individual case, purposefully* stack a panel with members of senior grades or ranks to achieve a desired result. *See generally Lewis, supra* at 342.

▮ The lynchpin of appellant's particular claim of court-stacking is that the composition of his court-martial panel and other panels within his command created a presumption that improper considerations of grade and rank were purposefully utilized by the convening authority. No precedent from this Court has been cited which recognizes such a presumption of irregularity. *Cf. United*

2. We have recognized a presumption of prejudice once a question of court-stacking has been

*States v. Mark*, 47 MJ 99, 101 (1997). Moreover, *United States v. Smith*, 37 MJ 773, 776–77 (ACMR 1993), a Court of Military Review case heavily relied on by defense counsel at trial, created no presumption on this basis. In that case, evidence was admitted showing a handwritten directive from the convening authority to the staff judge advocate (SJA) strongly suggesting selection based on rank. Accordingly, we are not inclined to recognize the presumption urged by appellant,[2] and his particular court-stacking claim can be denied on this basis alone. *See Upshaw*, 49 MJ at 113 (court-stacking claim not raised where only systematic inclusion or exclusion shown).

▮ Of course, it can be argued that the make-up of a particular panel or of several panels over time might circumstantially suggest an impermissible intent on the part of the convening authority. *See Lewis*, 46 MJ at 342; *United States v. Loving*, 41 MJ 213, 286–87 (1994), *aff'd on other grounds*, 517 U.S. 748, 116 S.Ct. 1737, 135 L.Ed.2d 36 (1996). However, a statistical showing supporting such an argument must be relevant, and other evidence in the record must be considered to determine whether an intent to stack the court actually existed. *See Nixon, supra* at 435. The military judge must consider all this evidence in deciding what a convening authority's motive was in a particular case. *Id.* (deference to factfinding of actual intent is appropriate).

Here, there was other evidence that the convening authority intended to comply with the particular statutory criteria of Article 25. It was shown that the acting SJA specifically advised the convening authority as follows:

When convening a court-martial, you are required to detail such members of the Armed Forces as, in your opinion, are best qualified for duty by reason of age, education, training, experience, length of service, and judicial temperament (Art. 25(d)(2), UCMJ). *Neither rank*, race, gender, duty position, or any other factor *may be used for the deliberate or systematic exclusion of qualified persons for court-martial membership.*

properly raised in a particular case. *See United States v. Upshaw*, 49 MJ 111, 113 (1998).

(Emphasis added.) Additionally, Brigadier General Burnette, who had replaced the previous convening authority, acknowledged in a written memorandum that he used Article 25 in selecting the members. *Cf. United States v. White*, 48 MJ 251, 260 (Sullivan, J., concurring in the result) (noting memorandum of convening authority articulating his compliance with Article 25). Finally, appellant has proffered no rebuttal evidence which contradicts the Government's showing that the convening authority acted properly in his detailing actions in this case. *See Upshaw, supra* at 113. In these circumstances, we have held that such a record does not persuasively establish a court-stacking claim. *Nixon, supra* at 435.[3]

Finally, appellant also made an appearance-of-court-stacking claim at the trial court below but has not actively pursued it on this appeal. *See generally United States v. Hedges*, 11 USCMA 642, 644–46, 29 CMR 458, 460–62 (1960) (Latimer, J., concurring). Long ago in *Greene*, 20 USCMA at 238, 43 CMR at 78, this Court held that reasonable doubt concerning the use of improper panel selection criteria would not be tolerated in the military justice system. This appearance-of-impropriety-type holding was echoed by then-Chief Judge Everett, writing for a unanimous Court in *United States v. Nixon, supra*, and we reaffirm it today. *See Upshaw, supra* at 113 (court-stacking claim treated as unlawful command influence issue). Nevertheless, in view of the extensive hearing held by the judge on this question and the ample evidence of lawful conduct on the part of appellant's convening authority, we further conclude that no such doubt exists in this case. *See generally United States v.*

*Gerlich*, 45 MJ 309, 313 (1996), citing with approval *United States v. Hagen*, 25 MJ 78, 86–88 (CMA 1987) (Sullivan, J., concurring, joined by Everett, C.J., and Cox, J.).

The decision of the United States Army Court of Criminal Appeals is affirmed.[4]

GIERKE, Judge (concurring):

The record reflects that officers of all grades were considered and that officers down to and including the grade of chief warrant officer 2 were detailed. A captain was detailed but relieved when appellant requested enlisted members. Two warrant officers were selected and then removed from the list for reasons not reflected in the record.

With respect to enlisted members, the record reflects that they were nominated in grades down to private first class. Because appellant was a specialist (E–4), it was not improper to exclude soldiers in grades private first class (E–3) and specialist (E–4) from consideration. *See* RCM 912(f)(1)(K), Manual for Courts–Martial, United States (1995 ed.); * *see also United States v. Upshaw*, 49 MJ 111, 112 (1998). While no soldiers in the grades of sergeant, staff sergeant, and sergeant first class were detailed, the record is devoid of any evidence that they were systematically excluded from consideration. *See United States v. White*, 48 MJ 251, 254–55 (1998) (permissible to "look first at the senior grades," so long as lower eligible grades not systematically excluded).

Based on this record, I am satisfied that the issue of court-stacking was not raised. Accordingly, I concur.

---

3. As noted above, Article 25 contemplates that a court-martial panel may not be a representative cross-section of the military population. *See United States v. Smith*, 27 MJ 242, 248 (CMA 1988). Accordingly, that portion of the defense's trial request for a court-martial panel reflecting a fair cross-section of the Fort Drum military community was also properly denied.

4. Congress has passed legislation requiring the Secretary of Defense to study the possible use of randomly-selected juries in the military and to send it a report on that study by April 15, 1999. National Defense Authorization Act for Fiscal Year 1999, Pub.L. No. 105–261, § 552, 112 Stat. 2013 (1998); *see Upshaw*, 49 MJ at 114 (Sullivan, J., concurring).

* This provision is unchanged in the 1998 edition of the Manual for Courts–Martial.