# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
STEPHENS, HOUTZ, and DEERWESTER
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Willie C. JETER**
Lieutenant Junior Grade (O-2), U.S. Navy
*Appellant*

**No. 201700248**

Argued: 28 July 2021—Decided: 20 October 2021

Appeal from the United States Navy-Marine Corps Trial Judiciary
*following remand from*
*the United States Court of Appeals for the Armed Forces*

Military Judges:
Heather Partridge (arraignment)
Jason L. Jones (trial)

Sentence adjudged 14 April 2017 by a general court-martial convened at Naval Station Norfolk, Virginia, consisting of officer members. Sentence approved by the convening authority: confinement for 20 years and a dismissal.

For Appellant:
*Major Anthony M. Grzincic, USMC* (argued)
*Lieutenant Clifton E. Morgan III, JAGC, USN* (on brief)

For Appellee:
*Lieutenant Catherine M. Crochetiere, JAGC, USN* (argued)
*Lieutenant John L. Flynn, JAGC, USN* (on brief)
*Lieutenant Gregory A. Rustico, JAGC, USN* (on brief)

Judge DEERWESTER delivered the opinion of the Court, in which Senior Judge STEPHENS and Judge HOUTZ joined.

_____

**PUBLISHED OPINION OF THE COURT**

_____

DEERWESTER, Judge:

A general court-martial consisting of officer members convicted Appellant, contrary to his pleas, of violating the Navy's sexual harassment instruction, drunken operation of a vehicle, sexually assaulting two different women, extortion, burglary, conduct unbecoming an officer, communicating a threat, and unlawful entry, in violation of Articles 92, 111, 120, 127, 129, 133, and 134, Uniform Code of Military Justice [UCMJ].[1] .

This case is before us for a second time. This Court issued its opinion in *Jeter I*, on 3 January 2019, where we affirmed the findings and sentence after addressing Appellant's original eleven assignments of error [AOEs]:[2]

> **I.** *Whether removal of minority and female members from the court-martial panel violated Appellant's Equal Protection and Due Process rights;*
>
> **II.** *Whether the Convening Authority committed actual or apparent unlawful command influence by stacking the members entirely with white men;*

_____

[1] 10 U.S.C. §§ 892, 911, 920, 927, 929, 933, and 934 (2012). After announcement of the findings, the military judge conditionally dismissed the sexual harassment specification, one of two specifications of drunken operation of a vehicle, one of three specifications of sexual assault, and one of two specifications of unlawful entry.

[2] *United States v. Jeter*, 78 M.J. 754, 761–62 (N-M. Ct. Crim. App. 2019) [*Jeter I*].

III. *Whether the military judge erred in admitting evidence and instructing members on the Appellant's motive and intent;*

IV. *Whether Appellant's conviction for sexual assault by bodily harm is legally and factually sufficient;*

V. *Whether Appellant's conviction for sexually assaulting his victim while she was asleep is legally and factually sufficient;*

VI. *Whether Appellant's conviction for sexual assault by threatening or placing his victim in fear is legally and factually sufficient;*

VII. *Whether Appellant's conviction for drunken operation of a vehicle in violation of the Virginia Code is legally and factually insufficient;[3]*

VIII. *Whether the military judge erred by denying Appellant's request for a mistake of fact instruction;*

IX. *Whether Appellant's trial defense counsel was ineffective;*

X. *Whether the military judge abused his discretion when he denied Appellant's motion to challenge a member for cause;*

XI. *Whether the military judge abused his discretion in denying Appellant's request for a new Article 32, UCMJ, proceeding.*

After this Court issued its opinion, Appellant petitioned the Court of Appeals for the Armed Forces [CAAF]. CAAF issued a summary disposition[4] vacating this Court's opinion and remanding for further consideration in light

---

[3] Raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). The military judge conditionally dismissed this specification. *See* R. at 958. AOEs IX, X, and XI were also raised pursuant to *Grostefon*.

[4] *United States v. Jeter*, 80 M.J. 200 (C.A.A.F. 2020) [*Jeter II*].

of *United States v. Bess*.[5] In *Bess*, the issue before CAAF was whether the convening authority, who was the same convening authority in Appellant's case, violated due process by stacking the members' panel with white members when the accused was black. Judge Ryan, joined by Chief Judge Stucky, concluded that the protections found in *Batson v. Kentucky*[6] do not extend to the selection of members by the convening authority.[7] Similar to this Court's now-vacated opinion in *Jeter I*, these judges noted that there was no precedent to extend the *Batson* protections to a convening authority's member selection, which is already covered by the requirements of Article 25, UCMJ.[8] Upon re-docketing with this Court, additional briefing and oral argument were provided by the parties on the issue of *Batson's* applicability to member selection by the convening authority.

We find that the convening authority did not violate Appellant's equal protection or due process rights, and affirm on this AOE. We further adopt our holdings on AOEs II-XI, consistent with this Court's prior published opinion in *Jeter I* and once again conclude the findings and sentence are correct in law and fact and that no error materially prejudiced Appellant's substantial rights.

## I. BACKGROUND

The facts of Appellant's assignments of error sent back to this Court in light of *Bess* stem from the 4 January 2017 General Court-Martial Convening Order [GCMCO] 1-17, whereby the convening authority, Rear Admiral (O-8) [RADM] JS, Commander, Navy Region Mid-Atlantic, convened a general court-martial composed of ten officer members. Based on evidence attached to the record on appeal, which was not presented to the trial court, two of the ten members of this original court-martial panel were black.

---

[5] *United States v. Bess*, 80 M.J. 1 (C.A.A.F. 2020).

[6] 476 U.S. 79, 96–97 (1986) (holding that if an accused member of a cognizable racial group can establish a prima facie case of purposeful discrimination in jury selection based on the prosecution's use of peremptory challenges for jurors of the same racial group, the government must provide a race-neutral explanation for challenging those jurors).

[7] *Bess*, 80 M.J. at 8. The other three judges in *Bess* either did not reach or disagreed with this legal conclusion. *See id.* at 15–23.

[8] *Id.* at 8–9.

On 6 April 2017, four days prior to the beginning of Appellant's trial, Captain (O-6) [CAPT] MM, who was serving as the Acting Commander, Navy Region Mid-Atlantic, and convening authority, amended GCMCO 1-17, and issued GCMCO 1B-17. He removed the ten members selected by RADM JS, and appointed eight new members. Based on the court-martial members' questionnaires, seven of these members identified themselves as white men.[9] When RADM JS returned as the convening authority, the day before trial was set to begin, he again amended the convening order by adding an additional member for a total of nine members. Based on the military judge's factual finding at trial, all nine of these members of the venire were white.

Prior to voir dire, Appellant's trial defense counsel [TDC] challenged the makeup of the members panel. He argued that a lack of minority members demonstrated a "systematic exclusion of members based on race and gender."[10] Having been presented with no evidence regarding the racial composition of the original panel, the military judge concluded that there was no evidence of a systematic, purposeful exclusion of any minority members by the convening authority. During a later Article 39(a), UCMJ, session conducted during a recess in individual voir dire, TDC renewed his motion, arguing that the convening authority had engaged in a pattern of empaneling only white male members in courts-martial for accused who were black. In support of his motion, TDC noted that the members' questionnaires asked the members their race and gender. The TDC also offered a portion of a trial transcript from a previous court-martial—purportedly convened by the same convening authority—wherein the trial defense counsel in the other courts-martial complained that there was no racial diversity—meaning no black members—on the panel. The military judge maintained his previous ruling, concluding, "I don't see any unlawful Article 25[, UCMJ] issue here . . . there is no evidence [the convening authority is] not using the Article 25[, UCMJ] criteria. . . . I still don't see the systematic exclusion of [eligible members based on race or gender]."[11]

The members returned a finding of guilty on multiple charges and specifications and sentenced Appellant to 20 years' confinement and a dismissal. In Appellant's first appeal before this Court, he submitted an affidavit from the

---

[9] Of the nine court-martial member questionnaires, only seven listed race on them. The final questionnaire did not have a race question on it. It is unclear from the record why some questionnaires asked about race, while others did not.

[10] R. at 171.

[11] *Id.* at 277.

Executive Officer [XO], Defense Service Office Southeast. In his affidavit, the XO asserted that RADM JS convened two other courts-martial besides Appellant's, where the accused was a black man and was convicted by panels made up of only white members. With the affidavit, the XO also enclosed a letter he had sent to RADM JS complaining about the lack of minority representation on members' panels for black accused. Thereafter, according to the XO's affidavit, RADM JS twice amended an existing convening order in the case of a black Naval officer represented by the XO, in order to include minority members. According to the affidavit, that officer accused was eventually acquitted.

CAAF remanded this case to this Court to consider Appellant's arguments concerning members' selection in light of its holding in *Bess*.[12] To that end, we found the evidence presented to this Court sufficient to question the presumption of regularity of the convening authorities' member selection[13] and ordered sworn declarations from RADM JS, CAPT MM, and CAPT AA, the staff judge advocate [SJA] who advised them. Appellant asserts that, in light of *Bess*, the convening authority's selection of panel members violated his right to equal protection under the Fifth Amendment.[14]

## II. DISCUSSION

### A. Members Selection Due Process

In his initial Appeal, Appellant argued first that the convening authority removed all minority representation from his court-martial, in violation of his Due Process and Equal Protection rights.[15] In our analysis we discussed *Batson's* avenue for a criminal defendant who is a member of a "cognizable racial group" to establish a prima facie case of purposeful discrimination in the selection of a jury based solely on the prosecution's use of peremptory challenges for jurors who are part of the same racial group.[16] Ultimately, we cited our unpublished decision in *Bess* in concluding that *Batson*'s per se rule

[12] 80 M.J. 1.

[13] *See Bess*, 80 M.J. at 10 (citations omitted).

[14] U.S. Const. amend V.

[15] *See Batson v. Kentucky*, 476 U.S. 79 (1986) (holding that the equal protection clause forbids a prosecutor to peremptorily challenge potential jurors based solely on their race).

[16] *Id*. at 96.

did not extend to a convening authority's selection of members.[17] Further, upon de novo review, we found Appellant failed to make a showing of systematic exclusion. We now further examine this issue in light of CAAF's decision in *Bess*.

### 1. Court-Martial Referral Process and Member Selection Procedure

The process of convening a court-martial is governed by the UCMJ and Rules for Courts-Martial [R.C.M.] and involves "preferring" charges, forwarding the charges, and "referring" the charges to a court-martial. The preferral process consists of the "accuser," signing an oath on the charge sheet that he or she has personal knowledge of or has investigated the allegations and that they are true to the best of his or her knowledge and belief.[18] The accuser then forwards the charges to the summary court-martial convening authority, that is, the commander who has summary court-martial jurisdiction over the accused.

The summary court-martial convening authority may either dismiss the charges, refer the charges to a summary court-martial, or forward the charges to the special court-martial convening authority, a superior commander who has special court-martial jurisdiction over the accused.[19] The special court-martial convening authority may, in turn, dismiss the charges, refer the charges to either a summary or special court-martial, or, if the charges are of a serious nature, direct an Article 32, UCMJ, preliminary hearing to determine whether the charges should be forwarded to the general court-martial convening authority for disposition.[20]

When a convening authority refers charges to a special or general court-martial, he or she issues a convening order which creates a panel of members to whom the charges can be referred (also referred to as the "venire").[21] The venire may be composed of officers specially selected by the convening authority for the specific case or it may be a panel of officers on a so-called "standing order." A standing order or "standing panel" consists of members

---

[17] *United States v. Bess*, No. 201300311, 2018 CCA LEXIS 476 (N-M. Ct. Crim. App. Oct. 4, 2018) (unpublished).

[18] R.C.M. 307(b)

[19] R.C.M. 403.

[20] R.C.M. 404.

[21] R.C.M. 501. The exception would be when a case is referred to a special court-martial consisting of a military judge alone under Article 16(c)(2)(A), UCMJ.

selected by the convening authority to potentially serve on any or all courts-martial convened during a period of time and to which the convening authority may ultimately refer many different cases.

The date of the trial is determined by the military judge, who is detailed to the case after the convening authority refers the case to court-martial. Depending on a number of factors, including the need for one or more pretrial hearings, the military judge may not decide upon the trial date for some time. When the judge does eventually set the trial date, the judge takes into account the judge's availability as well as the availability of the counsel for both sides—including any civilian counsel hired by the accused—and of the lay and any expert witnesses. In the typical case, the judge sets the trial for a date that is many weeks, if not months, after the convening authority originally selected the court members. It is quite common that several, and sometimes *all*, of the original members are not available for what eventually becomes the trial date. In such cases, the convening authority routinely amends the convening order to remove the unavailable members and to select replacements.

### 2. Batson*'s Applicability to Member Selection*

As we found in our initial opinion,[22] we again find that the mere absence of minority members within the venire selected by the convening authority, unlike a prosecutor's use of a peremptory challenge against a juror of the same racial group as the accused, does *not* establish a prima facie case of purposeful discrimination, which then shifts the burden to the government to provide a race-neutral explanation for the absence of such minority members. We have found no precedent to allow for the proposition that the mere selection of an all-white panel would require the convening authority to provide a race-neutral reason for the selection. Unlike the mechanism utilized in preemptory challenges in which a prosecutor specifically excludes a member of the same cognizable racial group, member selection is generally a process of *inclusion*, based on the statutory requirements found in Article 25, UCMJ. As such, we decline to adopt Appellant's position at oral argument that detailing an all-white panel is alone enough to establish a prima facie case of *exclusion* of black members.

---

[22] *Jeter I*, 78 M.J. at 765–66.

### 3. Systematic Exclusion of Cognizable Racial Group

As we discussed in our original opinion,[23] our analysis does not end with finding that *Batson*'s per se rule does not apply to the member selection process. We also review whether, through submission of other evidence, a prima facie case of systematic exclusion of minority members has been made. In addition, we review whether evidence presented establishes purposeful exclusion of minority members in Appellant's case, even if not over a period of time. Here, evidence submitted in the form of an affidavit from the XO of the Defense Service Office supports that similar all-white panels were selected in three other cases with a black accused. Further, Appellant also submitted evidence to this Court that the original standing court-martial convening order contained two black members, such that the effect of the subsequent amending convening orders replacing the original panel of ten members with nine all-white members at least has the appearance of excluding members of Appellant's cognizable racial group from his court-martial panel.

### a. Affidavit from the Executive Officer of the Defense Service Office

As we discussed in our initial opinion, and as CAAF outlined in *Bess*, the affidavit from the XO does not itself establish a prima facie case of systematic exclusion of black members in cases in which there is a black accused. While the affidavit may appear to show a pattern of these cases over a period of time, it does not alone show exclusion, let alone systematic exclusion of black members. While the affidavit notes four cases (including Appellant's) in which only white members were selected for a black accused's court martial panel, it does not include any information as to the *exclusion*, improper or not, of black members. There is no evidence that the convening authority who selected these members knew the race of the members selected—let alone purposefully chose not to select members of the particular accused's cognizable racial group—or even knew the race of the accused. Further, the officers serving as the convening authority who replaced the standing panel with new members in Appellant's case were not the same officer mentioned in the three other cases. As such, while the XO's affidavit might be used by the trial defense counsel to request additional member selection discovery to evaluate whether to make a motion for improper member selection, it is not enough to establish a prima facie case of systematic exclusion of black members in Appellant's case.

---

[23] *Id.* at 766.

b. Evidence of Black Members on the Standing Order

More problematic, however, is evidence submitted to this Court pursuant to its fact-finding authority supporting that two members on the original standing order were black. If the race of the members on the standing order were in fact known to the convening authority, and the convening authority specifically excluded such minority representation on the venire through the amended convening orders, it would tend to show a purposeful, albeit not systematic, exclusion of members of the accused's cognizable racial group—if , in addition to knowing the race of the members, the convening authority also knew the race of the accused. While convening authorities are presumed to act in accordance with Articles 25 and 37, UCMJ,[24] this presumption, like any other, can be called into question under the totality of the circumstances. In this case, because there appeared to be at least some evidence of actual exclusion (even if not purposeful) of members of the accused's own racial group, this Court ordered affidavits from the convening authority, acting convening authority, and SJA to provide their rationale for selection of the members in Appellant's case.[25] In the affidavits filed in response to our Order, all three individuals involved in the member selection process state they were not aware of the race of the members detailed in either the standing convening order or the amended convening orders. Further, they describe the process utilized during their time at Navy Region Mid-Atlantic. This consisted of an SJA review of Article 25 qualified members, which was presented to the convening authority for selection of the venire. According to the affidavit filed by the SJA, the race of neither the accused nor the members was ever discussed, either for Appellant's case or any other case involving these three individuals during their tenure at Navy Region Mid-Atlantic.[26]

Accordingly, we conclude based on the evidence in the record that the selection process utilized in Appellant's case was proper. While there may have been a need to switch out the members on the standing order to allow for nominating and seating new members, this is common practice especially

---

[24] *See Bess*, 80 M.J. at 10.

[25] We conclude the trial judge was correct in finding there was no evidence of such exclusion, because the evidence regarding the racial composition of the original standing panel was not presented to him for comparison against the venire at trial.

[26] The SJA did mention one time in which there was a challenge under *Batson v. Kentucky* in a separate case, in which he did discuss the merits of the challenge with the convening authority.

in large jurisdictions such as Navy Region Mid-Atlantic. As such, we find there was neither purposeful nor systematic exclusion of members of Appellant's racial group.

## B. Unlawful Command Influence

Appellant next argues the convening authority exerted actual or apparent unlawful command influence [UCI] by empaneling only white, male members to his court-martial. We examined *United States v. Lewis*, where CAAF discussed that five women detailed to a court-martial was an anomaly, specifically finding that there was no evidence of improper selection criteria.[27] We have also considered *United States v. Riesbeck*, in which five women, four of whom were victim advocates, were detailed to the appellant's panel and in which the case was "replete with evidence . . . of intentional choices by the first three convening authorities . . ."[28] Turning to this case, only although seven of the nine members' questionnaires contained racial or ethnic responses, there was no evidence the convening authority knew of the race or ethnicity of the other two members. Appellant's case is more analogous to *Lewis*, with no evidence of improper selection criteria. Further, there is no evidence of any of the improper selection criteria as in *Riesbeck*. Accordingly, we find Appellant has not met his burden to establish some evidence of potential UCI.

We also considered the case for apparent UCI, asking whether "an objective, disinterested observer, fully informed of all the facts and circumstances, would harbor a significant doubt about the fairness of the proceeding."[29] We find that there are insufficient facts to lead a reasonable person to harbor doubt of the fairness of the proceeding, and that Appellant has not presented evidence the convening authority selected members using criteria other than those in Article 25, UCMJ.

## C. Additional Assignments of Error

### 1. Military Rule of Evidence 404(b)

Appellant further argues the military judge erred in instructing the members they could use evidence from the charged allegations against victims GCM, MH, and AM to prove Appellant's motive and intent of other

---

[27] *United States v. Lewis*, 46 M.J. 338, 342 (C.A.A.F. 1997).

[28] *United States v. Riesbeck*, 77 M.J. 154, 164 (C.A.A.F. 2018).

[29] *United States v. Salyer*, 72 M.J. 415, 423 (C.A.A.F. 2013).

charged misconduct under Military Rule of Evidence [Mil. R. Evid.] 404(b). In reviewing the applicability of *United States v. Hills*, we conclude that it did not apply to this case.[30] We fully adopt our analysis in *Jeter I*[31] that *Hills* deals with propensity evidence and that evidence admitted under Mil. R. Evid. 404(b) is not propensity evidence as it is "not admissible to prove the character of a person in order to show action in conformity therewith."[32]

Next, in reviewing evidence of motive and intent, we agree with the military judge's application of the *Reynolds* test, finding that a reasonable factfinder could, by a preponderance of the evidence, find that Appellant engaged in or attempted the specific acts.[33] We also find the military judge did not abuse his discretion in admitting evidence of Appellant's intent. Finally, in examining the third prong, we conclude the military judge did properly apply the Mil. R. Evid. 403 balancing test. Ultimately, the military judge did not abuse his discretion in admitting evidence of charged misconduct to prove motive and intent regarding other charged misconduct. Further, even if there was error, it is harmless error.

### 2. Legal and Factual Sufficiency

Appellant also contends his convictions for sexual assault of AM and GCM are factually and legally insufficient. In reviewing the evidence supporting Appellant's conviction for sexually assaulting AM, we reviewed Appellant's allegations of gaps in her memory, and conclude that in considering all the evidence in a light most favorable to the prosecution, a rational factfinder could have found that she did not consent.

Concerning Appellant's conviction for sexually assaulting GCM, he argues that the Government failed to prove that he threatened her, a necessary element for that specification as charged. In reviewing Appellant's statements, we disagree, and find that a reasonable person would have been in fear of being subjected to Appellant's implied actions—i.e., either engage in sexual relations with him or be held accountable for misconduct. Appellant argues that reporting misconduct is not a "wrongful action" as required by statute, but was instead a normal part of his duties. However, we fully adopt

---

[30] *United States v. Hills*, 75 M.J. 350 (C.A.A.F. 2016).

[31] *Jeter I*, 78 M.J. at 769–70.

[32] Mil. R. Evid. 404(b) (2012).

[33] *United States v. Reynolds*, 29 M.J. 105, 109 (C.M.A. 1989).

our analysis in *Jeter I*[34] that the quid pro quo nature of his statement transformed the statement into wrongful conduct. Further, Article 120(g)(7) specifies threatening or placing that other person in fear of the threat "to accuse any person of a crime." We therefore find a reasonable trier of fact could have found all the essential elements beyond a reasonable doubt.

### 3. Mistake of Fact Instruction

Appellant further claims the military judge erred in denying his request for a mistake of fact as to a consent instruction. However, in reviewing all the evidence admitted during trial, we adopt our analysis in *Jeter I*[35] and find that no evidence was presented to justify a mistake of fact instruction.

### 4. Ineffective Assistance of Counsel

Appellant next claims that his trial defense counsel [TDC] was ineffective, insofar that he should have requested the bridge deck log to demonstrate Appellant was on watch when GCM claimed he assaulted her. Further, he alleges his TDC should have presented MH's 911 call, describing the intruder wearing a purple or orange shirt, when Appellant was arrested wearing a gray shirt. In our review applying the test for ineffective assistance of counsel under *Strickland v. Washington* test, we once again adopt our analysis in *Jeter I*[36] and do not find the TDC deficient.[37] Instead, we find he made reasonable tactical decisions.

### 5. Challenges for Cause

Finally, Appellant challenges one of the members, Lieutenant [LT] B, for actual and implied bias. He argues LT B knew one of the witnesses, thought he had a poor work ethic, served as the legal officer during the witness' administrative separation board, and served as recorder at an unrelated administrative separation board for sexual assault. The military judge denied the challenge for cause at trial. As we did in *Jeter I*,[38] we reviewed for both actual and implied bias. LT B stated he had little experience as a legal officer and did not interact with the witness closely. The military judge's ruling on

---

[34] *Jeter I*, 78 M.J. at 776.

[35] *Id*. at 777–78.

[36] *Id*. at 778–79.

[37] *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).

[38] *Jeter I*, 78 M.J. at 779–80.

the record was thorough and noted that knowing a witness is not uncommon in courts-martial. Therefore, we find no actual bias, concurring with the military judge's findings at trial. Further, in applying *United States v. Woods*,[39] and in review of the totality of the circumstances, we conclude that the presence of the member would not cause the public to think the accused did not receive a fair and impartial panel of members, and would not injure the public's perception of the military justice system.

## III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[40]

The findings and sentence are **AFFIRMED**.

Senior Judge STEPHENS and Judge HOUTZ concur.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court

---

[39] *United States v. Woods*, 74 M.J. 238, 243 (C.A.A.F. 2015).

[40] Articles 59 & 66, UCMJ.