Christian N. DAVIS, Petitioner,

v.

Col. Micheal A. LANSING, Commandant, USDB, Respondents.

No. 99–3385–RDR.

United States District Court, D. Kansas.

May 6, 2002.

36. *Id.* at 1116.　　37. *Id.*

Christian Nathaniel Davis, USDB–Ft Leavenworth, KS, for petitioner.

David D. Plinsky, Office of United States Attorney,Topeka, KS, Mary K. Ramirez, Washburn University School of Law, Topeka, KS, for Michael A. Lansing, respondent.

Brad Bailey, Office of United States Attorney, Topeka, KS, for USDB, (NFN)(NMI) Commandant, USDB, respondents.

### MEMORANDUM AND ORDER

ROGERS, District Judge.

This is a petition for writ of habeas corpus, 28 U.S.C. § 2241, filed by an inmate while he was confined at the United States Disciplinary Barracks, Fort Leavenworth, Kansas. An order to show cause issued and the parties have filed responses. In 1992 and 1993, petitioner was tried by a general court-martial, consisting of officer and enlisted members at Fort Polk, Louisiana. Pursuant to his pleas of guilty, he was convicted of fraudulent enlistment, making a false official statement, and adultery. Contrary to his pleas, he was convicted of attempted premeditated murder, conspiracy to commit premeditated murder, premeditated murder, and aggravated arson. He was sentenced to confinement for life, forfeiture of all pay and allowances, reduction to Private E–1, and a dishonorable discharge. The victim of petitioner's crimes was his wife. The arson charges arose from a fire in their trailer home, which his wife had escaped after he left in the middle of the night with their infant daughter leaving his wife home

alone sleeping. Years later, the wife was found shot to death in her bed, all while Davis was involved in a long-term affair with another woman.

## PROCEDURAL HISTORY

The convening authority approved the adjudged findings and sentence. Petitioner's case was then reviewed by the Army Court[1] of Criminal Appeals (Army Court) where he claimed (1) the government was improperly allowed to have its main criminal investigator who testified at trial remain at counsel table throughout the proceedings as a representative; (2) petitioner's motion to sever the trailer fire charges from the remaining charges was improperly denied; (3) irrelevant character trait evidence of the victim was improperly admitted; (4) the military judge failed to declare a mistrial after prejudicial, inadmissible testimony; and (5) the reasonable doubt instruction contained misleading language. See "Assignment of Errors and Brief on Behalf of Appellant," Doc. 5, Attachment 3. Petitioner personally raised 6 additional issues pursuant to Grostefon[2]: (1) failure of the government to disclose possible exculpatory evidence of swabbings and a 1971 diary, (2) factual insufficiency, (3) denial of defense request to recall and rehabilitate an expert witness, (4) use of unreliable re-enactments; (5) denial of admission into evidence of the victim's poems written 11 to 20 years before her death, and (6) cumulative effect of errors which resulted in denial of fair trial. See "Supplemental Assignments of Error and

Brief on Behalf of Appellant," (Doc. 5, Attachment 3). The three-judge panel of the Army Court found that the assigned errors had no merit and affirmed the convictions and sentence. They also concluded that the issues personally asserted by petitioner lacked merit.

Davis then petitioned the Court of Appeals for the Armed Forces (CAAF) for review of the Army Court decision, and was directed to file a Supplement to his Petition for Grant of Review. In his Supplement, he sought review of all errors raised before the Army Court including the Grostefon issues. He also complained of the Army Court's denial of his motion to brief the Grostefon issues. The CAAF granted review on one issue only: whether the Army Court erred when it concluded that the proof as to charges I and IV (attempted premeditated murder and aggravated arson) was legally sufficient. In 1998, the CAAF affirmed the decision of the Army Court and petitioner's conviction was final.

In 1999, Davis filed a writ seeking extraordinary relief in the nature of habeas corpus before the Army Court, alleging the court-martial lacked jurisdiction for failure to comply with Article 25, U.C.M.J., 10 U.S.C. § 825 (the personal election of enlisted members by an accused). The Army Court denied the petition. Petitioner appealed this denial to the CAAF, which also denied the petition.

## CLAIMS

In his petition to this court filed in 1999, Davis raised one issue: the court-martial

---

1. As respondent points out, the review by the Army Court is not perfunctory. The Army Court must independently review (de novo) the entire record of trial. Article 66(c), U.C.M.J., states, "[i]n a case referred to it, the [Army Court] may . . . affirm only such findings of guilty and the sentence . . . as it finds correct in law and fact . . . . In considering the record, it may weigh the evidence, judge the credibility of witnesses, and determine

controverted questions of fact . . . ." 10 U.S.C. § 866(c).

2. United States v. Grostefon, 12 M.J. 431 (C.M.A.1982), provides that a petitioner may personally raise issues before the military appellate courts. Grostefon issues must be presented but need not be briefed by appellate counsel when counsel believes they are unsupported in law or fact.

lacked jurisdiction because the record of trial does not reflect compliance with Article 25. Respondent filed its Answer and Return addressing this single issue. Petitioner then filed a Motion to Amend his Petition to add five claims, at the same time as he filed his Traverse. The motion to amend was granted and respondent filed a Supplement to Answer and Return addressing the added issues. The additional grounds raised by Davis before this court are: (2) petitioner was denied his Sixth Amendment right to effective assistance of counsel at trial when counsel failed to raise his lack of jurisdiction claim, and on appeal, when counsel failed to develop and litigate his trial error claims; (3) the court-martial lacked jurisdiction because petitioner's term of enlistment expired and his pay and allowances were discontinued prior to the court-martial and sentencing; (4) petitioner was denied effective assistance of counsel because laboratory testing for gun residue was not done which would have exonerated him; (5) the 1971 diary of the victim in the possession of the prosecution contained exculpatory evidence and was withheld from the defense; and (6) petitioner was denied his statutory right to have appellate defense counsel represent him before the United States Supreme Court.

Petitioner's pending Motion to Expedite the Proceedings (Doc. 23) and "Motion to Change Respondent ...." (Doc. 25) are rendered moot by the court's determination of this action.

## STANDARDS OF REVIEW

Davis urges this court to review his claims de novo. However, a plurality of the United States Supreme Court has stated that a district court may not review

challenges to military courts-martial de novo unless the military courts have "manifestly refused to consider those claims." *Burns v. Wilson,* 346 U.S. 137, 142, 73 S.Ct. 1045, 97 L.Ed. 1508 (1953). The Tenth Circuit Court of Appeals cited *Burns,* 346 U.S. at 142, 73 S.Ct. 1045, when it similarly ruled over thirty years later: "We will entertain military prisoners' claims if they were raised in the military courts and those courts refused to consider them." *Watson v. McCotter,* 782 F.2d 143, 145 (10th Cir.), *cert. denied,* 476 U.S. 1184, 106 S.Ct. 2921, 91 L.Ed.2d 549 (1986), *citing Burns,* 346 U.S. at 142, 73 S.Ct. 1045. Based upon *Burns* and subsequent Tenth Circuit opinions, this court's review of military courts-martial has been quite limited. Inconsistency has been noted among the circuits on the proper amount of deference due the military courts and the interpretation to be given the "full and fair" consideration standard announced in *Burns.* *See Brosius v. Warden,* 278 F.3d 239, 244 (3d Cir.2002). However, the Tenth Circuit[3] "has consistently granted broad deference to the military in civilian collateral review of courts-martial." *Watson,* 782 F.2d at 144.

Davis argues that the standard of review of his habeas claims should be the same as for habeas claims raised by civilian petitioners. He asserts that applying a different standard to military habeas amounts to a denial of equal protection and an unconstitutional suspension of the writ of habeas corpus. Davis further asserts that the writ is the "means to keep the military subordinate to civil authority." These arguments are contrary to *Burns* and are not supported by prevailing legal authority.

■ This court agrees with petitioner that there is no question but that the

---

**3.** The Tenth Circuit has the most experience with habeas petitions filed by servicemembers due to the location of the United States Disci-

plinary Barracks at Fort Leavenworth, Kansas (*see Brosius* at 244).

federal civil courts have jurisdiction under 28 U.S.C. § 2241 over applications for habeas corpus filed by persons confined by the military courts. *Burns,* 346 U.S. at 139, 73 S.Ct. 1045. However, it rejects his argument that the same standard applies to this court's review of a challenge to a court-martial as to challenges to criminal convictions entered in civilian courts. This court also declines to apply the standards of 28 U.S.C. § 2254, governing state habeas actions to military habeas "because of the peculiar relationship between the civil and military law." As the U.S. Supreme Court stated, the "law which governs a civil court in the exercise of its jurisdiction over military habeas corpus applications cannot simply be assimilated to the law which governs the exercise of that power in other instances." *Burns,* 346 U.S. at 139–40, 73 S.Ct. 1045.

Even though the *Burns* decision was a plurality, a majority of the justices deciding the case agreed that the civil court's review of military habeas is exceptionally limited. Language in *Burns* is instructive as to the rationale for that limited review. The plurality in *Burns* emphasized that military law "is a jurisprudence which exists separate and apart" from the law which governs in the federal judiciary. *Id.* at 140, 73 S.Ct. 1045. The court noted that the civil courts have "played no role in its development;" have "exerted no supervisory power over the courts which enforce it;" and "the civil courts are not the agencies which must determine the precise balance to be struck" in adjusting the "rights of men in the armed forces ... to meet certain overriding demands of discipline and duty." *Id.* The *Burns* Court observed that the "Framers expressly entrusted these tasks to Congress," which established a Uniform Code of Military Justice applicable to all members of the military, "carefully defined the rights of those subjected to military law," and "provided a complete system of review within the military system to secure those rights." *Id.* Furthermore, the military courts have the same responsibilities as do the federal courts to protect a person from a violation of his constitutional rights. *Id.* at 142, 73 S.Ct. 1045. The *Burns* plurality also stated:

> In military habeas corpus cases, even more than in state habeas corpus cases, it would be in disregard of the statutory scheme if the federal civil courts failed to take account of the prior proceedings—of fair determinations of the military tribunals after all military remedies have been exhausted. Congress has provided that these determinations are "final" and "binding" upon all courts. *Citing* 50 U.S.C. § 663. *Id.* at 142, 73 S.Ct. 1045.

◼ The Tenth Circuit reconfirmed this limited review of military courts-martial by federal district courts in *Lips v. Commandant, U.S. Disciplinary Barracks,* 997 F.2d 808, 810 (10th Cir.1993), *cert. denied,* 510 U.S. 1091, 114 S.Ct. 920, 127 L.Ed.2d 213 (1994). At the outset, the Circuit acknowledged that the military has its own independent criminal justice system governed by the Uniform Code of Military Justice, 10 U.S.C. §§ 801–940, which is all-inclusive and provides for courts-martial, appellate review, and limited certiorari review by the United States Supreme Court. *Id.* The court reasoned that because of the independence of the military court system, special considerations are involved when federal civil courts collaterally review court-martial convictions[4]. *Id.* The Tenth

---

4. The Third Circuit Court of Appeals recently determined a habeas petition challenging a military court-martial by applying 28 U.S.C. § 2254(d) and (e)(1) which govern review of state court proceedings. *Brosius,* 278 F.3d at 244–45. That has not been the approach tak-

Circuit then delineated the following standards of review:

> The starting point in our discussion of habeas review standards of military convictions is *Burns v. Wilson*, 346 U.S. 137, 73 S.Ct. 1045, 97 L.Ed. 1508 (1953). That case stands for the proposition that federal courts have jurisdiction over applications for habeas corpus by persons incarcerated by the military courts, though "in military habeas corpus the inquiry, the scope of matters open to review, has always been more narrow than in civil cases." *Id.* at 139, 73 S.Ct. 1045. The plurality in *Burns* stated that "when a military decision has dealt fully and fairly with an allegation raised in [a petition for habeas corpus], it is not open to a federal civil court to grant the writ simply to re-evaluate the evidence." *Id.* at 142, 73 S.Ct. 1045. In like vein, the Court stated that "[i]t is the limited function of the civil courts to determine whether the military have given fair consideration to each of these claims." *Id.* at 144, 73 S.Ct. 1045.

> Under *Burns*, if the military gave full and fair consideration to claims asserted in a federal habeas corpus petition, the petition should be denied. Only when the military has not given a petitioner's claims full and fair consideration does the scope of review by the federal civil court expand. (S.Ct. and L.Ed. cites omitted).

*Lips.* 997 F.2d at 810–811. Thus, the habeas court must first ask the question whether the military courts have given adequate consideration to the issues. If the answer is in the affirmative, no further inquiry is made. Habeas jurisdiction does not extend to a reassessment of the facts and issues fully and fairly considered by the military court. *Khan v. Hart*, 943 F.2d 1261, 1263 (10th Cir.1991).

en under *Burns* in this district and the Tenth

■ Davis makes the conclusory allegation that the military appellate courts' denial of his claims without discussion indicates that the consideration given was not "full and fair." Under *Burns* and Tenth Circuit cases, if an issue is brought before the military tribunal and is disposed of, even summarily, the federal habeas court will find that the military courts have given full and fair consideration to the issue. The fact that the military court did not specifically address the issue in a written opinion is not controlling. *Lips*, 997 F.2d at 812 FN2. Instead, "when an issue is briefed and argued" before a military court, the Tenth Circuit has "held that the military tribunal has given the claim fair consideration, even though its opinion summarily disposed of the issue with the mere statement that it did not find the issue meritorious or requiring discussion." *Id., citing Watson*, 782 F.2d at 145; *Ingham v. Tillery*, 42 F.Supp.2d 1188 (D.Kan.), *aff'd* 201 F.3d 448, 1999 WL 1243096 (10th Cir.1999, Table). The burden is on petitioner to show that the military review was "legally inadequate" to resolve his claims. *Watson*, 782 F.2d at 144, *citing Burns*, 346 U.S. at 146, 73 S.Ct. 1045. Without such a showing, the federal court cannot reach the merits. *Id.*

■ Furthermore, a federal habeas court will not review a petitioner's claims if they were not raised at all before the military courts. *Watson*, 782 F.2d at 145. In such circumstances, the Tenth Circuit has held:

> To obtain federal habeas review of claims based on trial errors to which no objection was made at trial, or of claims that were not raised on appeal, a state prisoner must show both cause excusing the procedural default and actual prejudice resulting from the error. [*citing Murray v. Carrier*, 477 U.S. 478, 491, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)].

Circuit.

**1252**

That same rule was applied by us in *Wolff v. United States,* 737 F.2d 877 (10th Cir.1984), wherein a federal habeas corpus procedure challenge was made to a court-martial conviction (cites omitted).

*Lips,* 997 F.2d at 812. This court has reviewed all the materials filed with these standards in mind.

## DISCUSSION

### LACK OF JURISDICTION

■ Petitioner claims the military court-martial lacked jurisdiction because the military judge failed to comply with the requirements of Article 25. Article 25(c)(1), 10 U.S.C. § 825, authorizes inclusion of enlisted members on a court-martial panel if "before the court is assembled for the trial of the accused, the accused personally has requested orally on the record or in writing that enlisted members serve on it." *United States v. Townes,* 52 M.J. 275, 276 (U.S. Armed Forces), *cert. denied,* 531 U.S. 821, 121 S.Ct. 62, 148 L.Ed.2d 28 (2000). Davis alleges that the court-martial was convened and constituted in violation of § 825(c) because he never personally requested orally on the record or in writing that enlisted members serve on his panel, and yet they did. He claims the contested portion of his court-martial is a nullity as a result. He asks the court to declare the findings of guilt on the charges involving premeditated murder and arson void due to this alleged jurisdictional defect.

The record shows that prior to the court-martial at a session under Article 39(a), UCMJ, 10 U.S.C. § 839(a), on August 18, 1992, the military judge explained to Davis:

> If you are tried by a court with members, at your request, at least one-third of the members would be enlisted persons; otherwise, they would ordinarily all be officers.

(Doc. 5, Attachment 1, ROT 9). After the military judge ascertained that Davis had discussed the choices with his attorney and understood them, he inquired as to "what type of forum the defense wants in this case." The defense attorney stated they wished to reserve the forum choice at that time. *Id.* at 11. At a later date, an officer and enlisted panel was subjected to voir dire at which petitioner was present. The defense made no objection to the presence of enlisted members on the panel, and in fact opposed trial counsel's objection to an enlisted member. The court was convened and assembled on January 6, 1993, with officer and enlisted members detailed and present. The defense made no objection while the members were sworn, and petitioner presented testimony before the court members but raised no objection. There is no allegation of coercion or that Davis was incompetent to make a knowing and intelligent decision. *See Townes,* 52 M.J. at 277. It is not disputed that there is nothing in the record which indicates petitioner personally made this choice of forum orally before the judge or in writing.

Petitioner is not entitled to relief on this claim for several reasons. First, petitioner's failure to object to composition of the court-martial panel during various Article 39(a) pretrial proceedings [5] including voir

---

5. The record shows that petitioner never made any objection to the presence of enlisted members on his panel although he had several opportunities and was fully aware prior to trial of the panel's composition. Before voir dire, the military judge asked the independent defense counsel (IDC) if he objected to the use of the jury packet provided to the

parties which included the convening orders and the seating chart of the panel with the names and ranks of the members. The IDC answered that they had no objection (ROT 809). The military judge also asked the IDC if the defense was "satisfied that the remaining members who were detailed to be here

dire prevented timely correction of this error by the military judge. *See United States v. Upshaw*, 49 M.J. 111, 113 (U.S. Armed Forces 1998). This together with his failure to object during trial and to raise this claim on direct appeal to the military courts constituted a waiver of the claim. Petitioner does not explain why he did not or could not raise the issue within the military court system. Indeed, his retained appellate counsel did raise several issues and petitioner raised six issues under *Grostefon*. Davis makes no allegation of cause or prejudice which would excuse this obvious default.

■ Second and most importantly, when petitioner finally raised this claim in a petition for habeas corpus relief filed in the Army Court, he fully briefed and argued the issue, and it was summarily denied. Petitioner then briefed and argued the issue to the CAAF which also summarily denied the petition. Under *Watson*, this constitutes full and fair consideration by the military courts precluding civilian federal habeas review.

Moreover, petitioner points to no specific instance in which he was denied due process rights merely because of the composition of his court-martial. *See Dodson v. Zelez*, 917 F.2d 1250, 1254 (10th Cir. 1990). Davis filed a 95–page brief with this court encaptioned "Traverse" in which he argued for expansion of this court's review of military habeas cases and this single issue. He did not allege one word about how he was prejudiced by having enlisted members on his panel, and the record reflects no prejudice.

Finally, the court notes that petitioner does not present convincing legal authority in support of this claim and certainly no prevailing Supreme Court authority. The military courts have reasonably held that "where administrative mistakes occur in detailing court members, such errors are nonjurisdictional and may be tested for prejudice." *Upshaw*, 49 M.J. at 113; Article 59(a), UCMJ, 10 U.S.C. 859(a); *see also United States v. Mayfield*, 45 M.J. 176 (U.S. Armed Forces 1996). Petitioner admits in his motion to amend that the legal basis for his claim was eroded in *United States v. Townes* [6], 52 M.J. 275 (U.S. Armed Forces 2000), handed down by the military courts after he filed his petition. The military courts have also held that the selection of a trial forum is an important choice personal to the accused, but it can be waived, *(United States v. Rhule*, 53 M.J. 647, 654–55 (Army Ct.Crim.App. 2000)); and that waiver of trial by members is not waiver of a constitutional right. *Id.*

■■ Petitioner also claims the court-martial lacked jurisdiction on an entirely different basis. He asserts that his term of enlistment expired and his pay and allowances stopped in December 1992, prior to his court-martial being convened in January, 1993, and that this deprived the court-martial of jurisdiction to try and sentence him. The record contains no indication that this claim was ever presented to the military courts and it will not be reviewed by this court for this reason. In passing, the court notes the claim is also without merit. Article 2(a)(1), U.C.M.J.,

are properly detailed ..," and the IDC responded affirmatively (ROT 811).

6. In *Townes*, the CAAF reversed the lower court opinion [*U.S. v. Townes*, 50 M.J. 762 (N.M.Ct.Crim.App.1999)] which had held that Townes' failure to personally select enlisted members was jurisdictional rather than

procedural error. The CAAF held that although the military judge erred in not obtaining on the record the accused's personal request that enlisted members serve on the panel, the error was not jurisdictional under the circumstances of the case and there was substantial compliance with Article 25. *Townes*, 52 M.J. at 276.

10 U.S.C. § 802(a)(1), expressly provides that servicemembers remain subject to the provisions of the Code while "awaiting discharge after expiration of their terms of enlistment." An effective discharge is not established until a valid discharge certificate has been delivered. *See United States v. King,* 27 M.J. 327, 329 (C.M.A. 1989). Petitioner makes no showing that he was unconditionally discharged prior to trial. *Cf. Vanderbush v. Smith,* 45 M.J. 590, 594 (Army Ct.Crim.App.1996), *aff'd* 47 M.J. 56 (U.S. Armed Forces 1997).

## INEFFECTIVE ASSISTANCE OF COUNSEL

■ Davis makes several distinct allegations in support of his claim that he was denied his constitutional right to effective assistance of counsel. The claim that he was denied this right at trial is supported only by his allegation that trial counsel's ineffectiveness resulted in his being tried by an "improperly composed court" not of his choosing. This claim, that his counsel's ineffectiveness caused the jurisdictional error, was not presented to the Army Court or the CAAF by either appellate counsel or under *Grostefon,* despite the fact that Davis was represented on appeal by two retained civilian counsel different from trial defense counsel, and one different Army Legal Services attorney. Nor did Davis raise this claim in his military habeas. The court concludes it was not raised at all before the military courts, and consequently, may not be reviewed by this court. *Watson,* 782 F.2d at 145.

Moreover, Davis presents no facts to support a claim that his counsel's performance at trial was deficient. In addition, since Davis has not even alleged any prej-

udice resulting from the military judge's failure to obtain his forum election on the record, the prejudice prong of the test for ineffective assistance of counsel could not be satisfied.

■ Petitioner's assertion that appellate counsel were ineffective has also never been presented to the military courts and may not be reviewed by this court for that reason. Moreover, his conclusory statement that appellate counsel failed "to develop and litigate the meritorious claims[7] of trial error on appeal" is insufficient to show deficient performances and prejudice to petitioner.

## DENIAL OF EXCULPATORY EVIDENCE

■ Petitioner's claim that he was denied effective assistance of counsel on the basis that trial counsel failed to have laboratory tests done at defense expense which would have cleared him of any wrongdoing has also not been presented to the military courts. Thus, this claim will not be considered as an ineffective assistance of counsel issue.

■ However, Davis did present the claim on military direct appeal as one of his *Grostefon* issues that the government failed to disclose possible exculpatory evidence. In support of this claim, petitioner alleges in his petition to this court that "swabbings" were taken from his and the victim's hands the night of the victim's death, which were sent to a lab for analysis for gunshot residue. However, a prosecution witness testified at trial that the lab did not test the swabbings because there was no barium in the .22 caliber cartridge used to shoot the victim so none could be

---

7. Petitioner alleges facts to support this claim concerning the Army Court's denial of appellate counsel's motions to file a supplemental brief which exceeded the court's 50–page limit after having already filed a 33–page appel-
late brief and another brief on the *Grostefon* issues which was untimely. The record indicates that all issues raised by appellate counsel and by Davis personally pursuant to *Grostefon* were presented to the Army Court.

deposited on the shooter's hand, and therefore the swabbings had not been analyzed for barium. Davis alleges the defense was also informed at trial that no testing was available on the swabbings. He asserts this was false and alleges it was "common knowledge" that tests for other substances found in .22 caliber gunshot residue were available including two tests to detect lead [8]. Davis further alleges that the tests would have proven his innocence because gunshot residue would have been discovered on the victim's hand and not on his, proving his main defense theory that the victim had shot herself.

Davis also alleges that the victim's 1971 diary which was in the possession of the government during trial was exculpatory evidence withheld by the prosecution. In support of this claim, he alleges the diary revealed the victim had suffered an attempted rape when she was 14 years old. He claims this would have proven his defense theory that she committed suicide because the twenty-something anniversary of this attempted rape was the "precipitating event" which the prosecution's expert witness testified at trial was a significant missing element in Davis' suicide theory.

These two claims were presented as *Grostefon* issues to the Army Court on direct appeal. In its unpublished opinion, the court discussed the merits of several issues briefed by counsel in the original appellate brief, and then set forth facts and reasons for denying retained appellate counsel's motions to file a fifty-page supplemental brief arguing the *Grostefon* errors. The court stated:

[T]his court denied the motion to file the supplemental brief, finding no extraordinary circumstances to exceed the fifty-page limitation ... of this Court's

Internal Rules of Practice and Procedure.

\* \* \* \* \* \*

... After the deliberative processes were well under way, appellate defense counsel filed a Second Motion for Leave to file Supplemental Assignments of Error consisting of a brief of nineteen pages (together with a Motion to Supplement the Record). The "supplemental assignments of error" appear to be the same *Grostefon* issues as previously submitted.

\* \* \* \* \* \*

The government appellate counsel opposed these filings on the grounds that they were untimely.... [W]e agreed with the government's position and denied the motions....[W]e also denied a Motion for Reconsideration of Denial of Motion to File Supplemental Assignments of Error.

Despite our denial of the motions to file counsel's briefs on issues which the appellant personally wished to be raised, we have not ignored the requirements of *Grostefon*. Counsel for the appellant has correctly complied with the requirement of *Grostefon* by identifying for us the issues which his client personally wishes us to consider. *Id.* at 437. We find no requirement in *Grostefon* for counsel to file, or for us to consider, extensive briefs on those issues when the filing of the briefs do (sic) not conform to the rules of practice and procedure of this court.

Having considered the issues personally raised by the appellant pursuant to *Grostefon*, we find no merit in them. *United States v. Davis*, No. 9300176 (Army Ct.Crim.App. April 25, 1996)(unpublished), Doc. 5 Attachment 4.

---

8. No evidence, in the form of affidavits or summaries of potential testimony by experts, is presented by petitioner to support these assertions beyond his conclusory allegations.

Davis then filed a Petition for Review in the CAAF and was directed to file a Supplement to the Petition. The Supplement filed by appellate counsel "briefed and argued" the issues of "Whether the Court below erred by finding no error in the Government's failure to disclose exculpatory evidence by deliberate inactivity on the part of government agents" and "Whether the Court below erred by finding no error in the Government's failure to disclose exculpatory evidence (the 1971 diary of the victim) in its possession" (Doc. 5, Attachment 5). After considering the supplement, the CAAF granted the petition for review on the single issue of sufficiency of proof, implicitly rejecting these claims of error. The CAAF heard oral argument and affirmed the Army Court in a published opinion. *United States v. Davis,* 49 M.J. 79 (U.S. Armed Forces 1998).

The military appellate court's denial of review on these claims is recognized as full and fair consideration of the issues presented. *See Dodson v. Zelez,* 702 F.Supp. 267, 270 (D.Kan.1988), *aff'd in part, rev'd in part,* 917 F.2d at 1250. The record makes it plain that the military court heard petitioner out on these allegations. *Burns,* 346 U.S. at 144, 73 S.Ct. 1045. Davis has failed to show that military review was legally inadequate to resolve the claims which he now urges upon the civil courts. He simply demands an opportunity to make a new record, to prove de novo in the District Court precisely the case which he failed to prove in the military courts. *See Burns,* 346 U.S. at 145, 73 S.Ct. 1045. Due regard for the limitations on a civil court's power to grant such relief precludes such action. *Id.* at 146, 73 S.Ct. 1045.

**DENIAL OF ASSISTANCE OF COUNSEL FOR SUPREME COURT APPEAL**

 Petitioner asserts that he was denied his statutory right under 10 U.S.C.

§ 870(c)(1) to have appellate defense counsel represent him before the United States Supreme Court, and that this resulted in his inability to exercise his right to this ultimate appeal. There is no indication in the record that this claim was ever presented to the military courts, and it will not be considered here for that reason. The court notes in passing that Davis does not present facts to state a claim of constitutional entitlement or violation. Respondent alleges that petitioner was sent an informational packet which would have allowed him to petition *pro se* for certiorari to the United States Supreme Court. Petitioner had previously been represented by retained appellate counsel. There is no adequate showing that he was entitled to appointed counsel to assist him in applying for cert. Nor is his conclusory allegation adequate that he was prevented from doing so by the lack of appointed counsel.

For all the foregoing reasons, the court concludes that petitioner is not entitled to federal habeas corpus relief. His pending motions are moot by reasons of the court's dismissal of this action.

IT IS THEREFORE BY THE COURT ORDERED that this action is dismissed and all relief denied.

IT IS FURTHER ORDERED that petitioner's Motion to Expedite the Proceedings (Doc. 23), and Petitioner's Motion to Change Respondents .... (Doc 25) are denied as moot.